[No. 26878. Department Two. February 23, 1938.]

MERRITT BLOXOM et al., Respondents, v. H. H. HEN-NEFORD et al., Appellants.[1]

[1]Reported in 76 P. (2d) 586.

*The Attorney General* and *W. A. Toner, Assistant,* for appellants.

*Byers, Westberg & James,* for respondents.

MILLARD, J.—Section 8, chapter 180, Laws of 1935, p. 716, Rem. Rev. Stat. (Sup.), § 8370-8 [P. C. § 7030-68], provides that persons engaged in business as distributors of agricultural products—brokers in agricultural products or produce jobbers— shall pay, for the act or privilege of engaging in such business activity, a tax which

". . . shall be equal, to the gross earning upon such sales multiplied by the rate of one-half of one per cent, the intent hereof being that tax measured by gross proceeds of sales shall be imposed only with respect to persons making the last of a succession of wholesale sales of such products. The term 'gross earnings,' as used in this section, shall mean the gross proceeds of sales less the amount of the purchase price paid for the products herein mentioned."

The term "gross proceeds of sales" is defined as follows in subd. (f), § 5, chapter 180, Laws of 1935, p. 711, Rem. Rev. Stat. (Sup.), § 8370-5 [P. C. § 7030-65]:

"(f) The term 'gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property without any deduction on account of the cost of property sold, the cost of materials used, labor costs, interest, discount paid, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses; . . ."

Section 8, *supra,* is applicable to persons buying grain, hay, fruit, vegetables, and other agricultural products and selling the same at wholesale to any person other than a person selling such products at retail.

Plaintiffs are engaged in the business of buying for their own account agricultural products and selling the same to wholesalers in this state. Nearly all of those

products are purchased by the plaintiffs outside of this state. Plaintiffs then transport the merchandise to this state and sell the products after their arrival in this jurisdiction. The purchase price paid by the plaintiffs for the merchandise often amounts to less than the cost of shipment of the products into this state. In addition to the freight cost, the plaintiffs pay for refrigeration, demurrage, insurance, fumigation and other processes essential to the protection of fresh fruit and vegetables in transit. Such products as are purchased in Mexico are further subject to a substantial duty upon their importation into the United States.

During the period from May 1, 1935, to June 1, 1936, plaintiffs reported to the state tax commission their gross sales, deducting therefrom the invoice cost paid to the shipper and the cost of transportation of the merchandise into this state. They remitted to the state tax commission the tax of one-half of one per cent on the remainder. A subsequent field audit by the state tax commission of plaintiffs' business resulted in the levy of an additional tax against the plaintiffs. The amount of the additional tax found due was ascertained by disallowance of plaintiffs' deduction from its gross sales of the cost of transportation and protection incurred in bringing the merchandise into this state, and by taxation of the plaintiffs on the difference between their gross selling price and the amount paid by them to the shippers of the products.

Plaintiffs instituted this action to require the state tax commission to refund that portion of the business tax thus collected from them which it is alleged is in excess of the amount which the tax commission may legally exact of the plaintiffs. Trial of the cause to the court resulted in findings of fact consonant with the trial court's view that the additional assessment was a burden upon interstate commerce, as it constituted tax-

ation of the freight itself, or taxation of the transportation. Judgment was accordingly entered in favor of the plaintiffs. The defendants appealed.

■■ The assumption that the exaction constitutes taxation of the freight itself or taxation of the transportation because the purchases are made in another state or in a foreign country and the freight and other expenses are necessarily involved in bringing the products into this state, is not sound.

The purchase price, as that phrase is employed in the definition of gross earnings in § 8, chapter 180, Laws of 1935, means the purchase price paid by the jobber to the person from whom he bought the goods. The cost of transportation to the purchaser's place of business, whether freight, drayage, or other costs paid by the purchaser after he bought the goods, can not, without doing violence to the language of the statute, be included within the phrase "purchase price." It should be borne in mind that the cost of transportation and other costs are paid on the goods by the jobber after the jobber becomes the owner. The statute does not provide that the jobber shall be entitled to a deduction from his gross sales of the *cost* of the merchandise to him. The statute specifically, definitely limits the deduction or exemption to only one kind of cost—the purchase price.

The tax imposed is an occupation tax for the act or privilege of engaging in business activity. It is measured by a percentage of the respondents' gross proceeds of sales less a deduction or *exemption* of the amount of the purchase price paid by the respondents for the agricultural products purchased by them. The costs or charges paid by the jobber to the railroad company or to the refrigerator car company do not come within any fair definition of the phrase "purchase price."

At the time the tax is exacted, the character of the merchandise as interstate commerce is lost. The tax is upon the privilege of use after commerce is at an end, and it is not upon the operations of interstate commerce. A tax upon use after importation is over is not a clog upon the process of importation, any more than is a tax upon the income or profits of a business. *Henneford v. Silas Mason Co.,* 300 U. S. 577, 81 L. Ed. 814, 57 S. Ct. 524.

It is not contended, nor could it be successfully urged, that the state could not exact a tax measured by the gross proceeds of sales of agricultural products by the jobbers. That being so, the fact that the state deducts from the amount to be taxed or exempts from the exaction a portion, no matter what its name, tag, or label may be, is an act of grace on the part of the state of which the taxpayer surely has no cause to complain.

"A taxing act is not invalid because its exemptions are more generous than the state would have been free to make them by exerting the full measure of her power." *Henneford v. Silas Mason Co.,* 300 U. S. 577, 81 L. Ed. 814, 57 S. Ct. 524.

Whether the respondents buy their merchandise f. o. b. Seattle or f. o. b. a point outside of this state, is a matter for the respondents to decide. It may be that the business of the respondents is peculiar in that a substantial amount of the costs of their merchandise consists of the costs of transportation the respondents are required to pay to bring those goods to Seattle. Every retail dry-goods or implement dealer in this state has a large amount of freight costs invested in the goods which he sells to the public. Nevertheless, such dealers are required to pay a tax upon the gross proceeds of their sales. Respondents pay the same kind of a tax required of all persons engaged in busi-

ness in this state. The tax is, as stated above, a gross proceeds tax for the privilege of engaging in business activities within this state.

The character of the merchandise as interstate commerce was lost when the tax was exacted. This tax is not laid on the occupation or business of carrying on interstate commerce. Unquestionably, an occupation tax or privilege tax such as the one in the case at bar, which affects interstate commerce not directly, but only incidentally, is valid, where it is clear, as it is in the instant case, that it is not imposed with the covert purpose or with the effect of impairing or defeating constitutional rights. *Hump Hairpin Mfg. Co. v. Emmerson,* 258 U. S. 290, 66 L. Ed. 622, 42 S. Ct. 305.

"To warrant interference with the exercise of the taxing power of a state on the ground that it obstructs or hampers interstate commerce, it must appear that the burden is direct and substantial and not merely incidental and fortuitous. A tax is not invalid merely because it affects interstate commerce and impedes the transit of persons and property from one state to another 'just in the same way, and in no other, that taxation of any kind necessarily increases the expenses attendant upon the use or possession of the thing taxed.' 'Every tax upon personal property, or upon occupations, business or franchises, affects more or less the subjects and the operations of commerce; yet it is not everything that affects commerce that amounts to a regulation of it, within the meaning of the constitution.' The fact that taxation tends to increase the expenses attendant upon the use or possession of the thing taxed does not of itself constitute an objection to such taxation as a burden upon interstate commerce." 1 Cooley Taxation, 806-7, § 374.

To summarize: The tax of which respondents complain is not upon the operations of interstate commerce, but is upon the privilege of use after commerce is at an end. It does not constitute taxation of the

amount the respondents pay to the railroad company or to the refrigeration company. The respondents are taxed on the gross proceeds of their sales within this state. Had the state exerted the full measure of its power, it could have taxed respondents on the gross proceeds of their sales within this state without any deduction or exemption. The statute does not, because it provides for a deduction from the gross proceeds of the sales within this state or exempts a portion labeled as "purchase price," offend any of the provisions of the constitutions of the United States and of the state of Washington.

Surely, if the legislature had intended to make this a net income tax and not a gross proceeds tax for the privilege of engaging in the business of distributor or jobber of agricultural products, it would have said so. If, in addition to the deduction of the purchase price paid by the respondents outside of this state for the merchandise, the respondents were given an additional exemption or deduction of the cost of transportation and other costs incurred in bringing the goods into this state, the plain language of the statute would be defeated and the respondents would be permitted to make the gross proceeds tax a semi-net income tax, which the legislature never intended.

The judgment is reversed, with direction to dismiss the action.

STEINERT, C. J., BEALS, BLAKE, and ROBINSON, JJ., concur.