110 So.2d 409 (1959)
UNITED STATES GYPSUM COMPANY, a Corporation, Relator,
v.
Ray E. GREEN, as Comptroller of the State of Florida, Respondent.
Supreme Court of Florida.
April 1, 1959.
*410 Knight, Kincaid, Young & Harris, Jacksonville, for relator.
*411 Richard W. Ervin, Atty. Gen., and John J. Blair, Asst. Atty. Gen., and Lewis H. Tribble, Tallahassee, for respondent.
O'CONNELL, Justice.
Relator, the United States Gypsum Company, filed with this Court its original petition in mandamus praying that the respondent, Ray E. Green, as Comptroller of the State of Florida, be directed to refund the relator certain taxes, penalties and interest thereon previously assessed against and paid by relator. This Court issued its alternative writ of mandamus so directing the respondent. Respondent moved to quash the writ. Oral argument on that motion has been heard. No return to the writ has been filed. The pertinent facts have been stipulated to by the parties.
In August, 1956 the respondent assessed the relator with an additional liability for Florida use tax for a period beginning May 1, 1954 and ending April 30, 1956. Relator did not contest a portion of the liability and paid such, with penalty and interest, to the respondent. Relator protested the remainder of the tax and, after rehearing, its objections were overruled, except that the penalty was reduced from 25% to 10% of the assessed and contested use tax.
Relator then paid the contested tax, penalty and interest involuntarily in order to avoid further penalties and interest. It filed in proper form and time its claim for refund, which claim was denied.
The contested use tax which relator was required to pay amounted to $26,540.11, the 10% penalty was $2,654.01 and the interest was $1,558.15. The total amount contested and paid was $30,752.27. Of the total $26,540.11 use tax, $347.58 was on "advertising", $25,407.58 on "machinery and equipment" and $784.95 on "freight". We shall consider each of these three categories separately.
Items included in the "advertising" taxed consisted of miniature samples of the relator's products and printed materials which were distributed free to wholesale and retail dealers. The printed materials consisted of brochures advertising relator's products and manuals containing technical information regarding its products. The total tax on advertising of $347.58 was broken down as being $86.90, $130.34 and $130.34 on the miniature samples, advertising brochures and technical manuals, respectively.
Relator asserts that the $86.90 tax on the miniature samples must have been based upon Rule 77(1) of the Comptroller's Rules and Regulations which provides:
"Donations of tangible personal property made by any dealer in the course of his business to any person or organization shall be taxed as if the full retail charge had been made for each item donated. For example, if prizes are announced as having been given by a named merchant, the merchant receives payment for the donated merchandise in the form of advertising and good will, and the tax applies."
By the terms of the statute which was in effect during the period the tax was assessed, Sec. 212.02(2), F.S.A., a "sale" means a transfer "for a consideration." Consequently, relator's argument is simply that respondent's Rule 77 directly contravenes such statute and hence is an unwarranted extension of the tax.
Despite the obvious appeal and logic of relator's assertion we nevertheless must find to the contrary. It is our observation that Rule 77 is directly in keeping with the obvious legislative intent evidenced by the sales and use tax law as a whole.
It is clear that the relator did not import the samples into this State for resale. Rather the relator was the ultimate user thereof.
Certainly if the samples had been produced in Florida and purchased by the relator, it would have been required to pay a sales tax thereon, because the transaction *412 would have constituted a "retail sale" or "sale at retail" under the provisions of Sec. 212.02(3) (a) and Sec. 212.02(3), (b), F.S.A. then existing.
Further, Sec. 212.06(4) provides that the importation of such property into this State for use, or consumption, or distribution, not for resale, "shall each be equivalent to a sale at retail" and taxed accordingly.
The primary function of the use tax is to complement the sales tax so as to make uniform the taxation of property subject to the tax, whether produced, purchased and used in this State or produced and purchased in another state or country, but used in this State.
This is made clear in Rule 91(4) which in part provides:
"* * * The two taxes, Sales and Use, stand as complements to each other and taken together provide a uniform tax upon either the sale at retail or the use of all tangible personal property irrespective of where it may have been purchased."
Since the samples were purchased in another state the sales tax would not apply, but since they were used, consumed or stored for use, not for resale, by the relator within this State they were subject to the use tax.
We must therefore conclude that as applied to this case Rule 77 is valid and that under the statute the imposition of the tax in the amount of $86.90 was proper and the respondent properly refused to refund the same.
The other two items labelled and taxed by respondent as "advertising" were advertising brochures, taxed in amount of $130.34, and technical manuals, taxed in amount of $130.34.
In support of its contention that these items are not taxable the relator makes the same argument as on the samples. In addition he argues that Rule 29(2) and (3), compiled by the respondent, specifically exempt the advertising brochures and technical manuals since they were distributed free.
Rule 29(2) and (3) read as follows:
"(2) Sales of package inserts, individual folding boxes and set-up boxes, and the printing thereon to manufacturers, or producers, to accompany their own manufactured products and to pass to the ultimate consumers upon final sales of the manufactured product contained or described therein, shall be deemed made for the purpose of resale.
"(3) Sales of direction sheets, instruction books, or manuals to a manufacturer, producer, wholesale or retail merchants, to be supplied with his product at no separate charge, are not taxable. If a separate charge is made for such sheets, books, manuals or pamphlets, the manufacturer, etc., shall collect the tax from his purchaser. Sales of advertising material such as brochures, pamphlets and price lists are taxable to the purchaser." (Emphasis added.)
The technical manuals are clearly not taxable under the first sentence of Rule 29(3), and it was improper to impose a tax on them.
However, the only reference in the Rule to advertising material is found in the last sentence of Rule 29(3). This sentence adds nothing to the statute itself for the sale of such advertising material is a sale of tangible personal property and therefore covered under the statute, and in every instance the tax is to be paid by the ultimate purchaser and collected by the seller. The reason for the presence of the last sentence is not clear. Since this sentence provides that the tax is to be paid on advertising material sold by the manufacturer it might be inferred that such material distributed free would not be taxable.
*413 While doubtful language in taxing statutes should be resolved in favor of the taxpayer, the reverse is applicable in the construction of exceptions and exemptions from taxation.
The relator has not made it to clearly appear that the advertising brochures were exempted from the tax, and the doubtful language in the rule must be construed in favor of the respondent.
We therefore conclude that the tax levied on the advertising brochures was proper, but that the technical manuals were not taxable and the respondent should be required to refund the sums collected thereon.
The second category of use tax complained of by the relator was the tax of $25,407.58 on machinery and equipment. In relator's plant at Jacksonville, Florida were 32 separate machines and prior to the subject tax period relator had paid to the respondent in excess of $300.00 as use taxes on each of the 32 machines. The items of machinery and equipment subjected to the $25,407.58 tax were all additional or replacement parts for the 32 machines. These items were purchased by relator out of the State and no one invoice therefor equalled or exceeded $10,000.00.
Sec. 212.08(2) Fla.Stats. 1953 and 1955, F.S.A., in effect during the subject period, created a limited exemption "from so much of the tax imposed by this chapter, as shall exceed three hundred dollars" on the sale, use, storage or other consumption in the State of "machines and equipment and parts therefor" used in "compounding, processing, producing or manufacturing of tangible personal property for sale." Respondent's Rule 88 concerns this section of the statute.
As we understand it relator's basic contention is that once a user of machinery, employed in "compounding, processing, producing or manufacturing of tangible personal property for sale" had paid a tax of $300.00 on such machinery and parts therefor, all further purchases of additional or replacement parts for use on said machines were exempt from taxation under the terms of the statute, Sec. 212.08(2) F.S. 1953, 1955, F.S.A., regardless of when purchased or the amount of the parts purchased at any given time. Having previously paid $300 tax on each machine it says the additional parts purchased are not taxable.
In Sec. 212.08(2), supra, the legislature authorized:
"The comptroller * * * to promulgate rules and regulations not inconsistent with this section further defining `machines and equipment and parts therefor' for the purpose of enforcement of uniformity in tax collections hereunder."
In Sec. 212.18(2) F.S. 1953 and 1955, F.S.A., the Comptroller was given general authority to make and publish rules and regulations not inconsistent with the provisions of the statute.
The Comptroller made and published Rule 88 pertaining to the question now before us. In doing so it seems clear that he acted not only on the authority given in Sec. 212.08(2), but on the more general authority given in Sec. 212.18(2).
This Rule 88 specifies that the limitation of $300.00 is not an overall limitation. It further provides that orders placed for the sale, delivery and use in one particular place within six months are entitled to the limitation but an order for use at different locations is not, although the limitation may apply to the portion of the order going to each of the respective locations. The rule provides that if shipments are made beyond six months from the date of the order, the maximum tax of $300.00 is due on each portion of the order which is shipped in a different six months period. The rule further provides that a blanket order placed for delivery within six months of so much machinery or equipment as the *414 party ordering may require is not subject to the maximum tax, but the $300.00 maximum applies to each invoice under said blanket order.
In essence, the regulation of the respondent, as admitted by him in his brief, applies the limited exemption to all machinery and equipment and parts therefor which are included on a single invoice and are delivered within six months to one particular place.
The relator contends, among other things, that the provisions of Rule 88 impose an unwarranted limitation on the exemption provided in Sec. 212.08(2). The respondent says it is an extremely fair construction of the limited exemption provided in the statute.
We cannot agree with the relator in its contention that additional or replacement parts for use on machinery on which a tax of $300.00 had been paid would be exempt from taxation.
Sec. 212.21(2) states that it was the legislative intent "to tax each and every sale, admission, use, storage, consumption, or rental levied and set forth in" the statute, except those specifically exempted.
Reading this section together with Sec. 212.08(2) it seems clear to us that the limited exemption was to be applied to each separate purchase and/or use of machinery and/or parts and not cumulatively as the relator, in effect, contends. We think that Rule 88, insofar as it affects the question now before us and under the facts of this case, is fair and reasonable and is not inconsistent with the statute.
Our conclusion on this item is strengthened by the fact that the 1957 Session of Legislature, in what is now Sec. 212.08(4) F.S. 1957, F.S.A., amended Sec. 212.08(2) to provide that the limited exemption applies to a "single transaction" and defining a single transaction to "include orders placed and accepted for the sale and delivery within six months by one supplier, and the use in one particular location."
The relator and respondent differ as to the inferences which must be drawn from the making of such amendment.
Relator says it indicates that the Legislature felt it necessary in order to uphold the construction placed on the statute by the respondent.
Respondent says it indicates acquiescence of the Legislature in his construction of the statute, and in an indication of the meaning that the Legislature attached to the provisions of the statute before it was amended. In support he cites the cases of In re Hurle, 1914, 217 Mass. 223, 104 N.E. 336, L.R.A. 1916A, 279, and California School Township, Starke County v. Kellogg, 1941, 109 Ind. App. 117, 33 N.E.2d 363. In the last case the court said, 33 N.E.2d at page 366:
"If it can be gathered from a subsequent statute in para materia what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute."
While we do not base our decision wholly on such, we think that so much of the amendment, passed in 1957, which provides that the limited exemption shall apply to any "single transaction" is a declaration of the intention of the legislature as to the meaning of the words of Sec. 212.08(2) prior to its amendment. This is consistent with our holding above stated.
This Court on numerous occasions has expressed the rule that the contemporaneous construction of a statute by those charged with its enforcement and interpretation is entitled to great weight and that courts will not depart from such construction unless it is clearly erroneous. Gay v. Canada Dry Bottling Co. of Fla., Fla. 1952, 59 So.2d 788.
The relator has not shown, as applied to the facts of this case, that the construction of the statute by the respondent was clearly erroneous.
*415 Consequently, we hold that the imposition of the tax on the "machinery and equipment" in amount of $26,540.11 was proper and the respondent properly declined to refund same.
The last category of tax complained of by relator was that imposed by respondent on freight and amounts to $784.95.
The stipulation of facts submitted to this Court by the parties, insofar as it relates to the item of freight, reads as follows:
"The items listed as `Freight' * * * were freight charges incurred as separate items of expense apart from and after the moment of purchase of tangible articles later transported to Florida for use in said state. Such freight charges were not a part of the cost of the articles at the moment of purchase, for the Company after the time of purchase contracted for the transportation of such articles and paid such transportation costs separate from the invoice prices of the articles."
The use tax is levied by Sec. 212.05, F.S.A., and the rate of tax is specified in subsection (2) thereof as follows:
"At the rate of three percent of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed or stored for use or consumption in this state * * *."
The legislative intent is made crystal clear, by Sec. 212.06(1), F.S.A., which specifies the time at which the cost price shall be determined by providing that the use tax shall be collected at the rate of:
"* * * three percent of the cost price, as of the moment of purchase * * *." (Emphasis ours.)
Sec. 212.05(2), F.S.A. is not in conflict with Sec. 212.06(1), F.S.A. for both provide that the base upon which the tax is to be levied is the cost price of the personalty. The latter section merely specifies the time at which the cost price will be fixed for the purpose of computing the tax.
Relator contends, and we think correctly, that under the above quoted stipulated facts and the statutes above-mentioned the freight charges are not taxable since such charges, being incurred by the relator after the consummation of the out of state purchases of the personalty, were not a part of the cost price "as of the moment of purchase."
It seems clear to us that it is the intention of the legislature that the cost price of the article, for the purpose of computing the use tax, be determined and fixed on the basis of the transaction between the vendor and vendee at the time of the consummation thereof. In effect this means that in cases such as this "cost price" and "purchase price" are synonymous.
This construction is not in conflict with Sec. 212.02(5), F.S.A. which defines cost price to be:
"`Cost price' means the actual cost of articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor or service costs, transportation charges, or any expenses whatsoever."
We construe this last quoted subsection to mean that the legislature intended to adopt as the basis for the tax the total amount paid by the purchaser to the seller at the time the sale was consummated, and that for the purpose of taxation the purchase price, i.e. cost price to the purchaser, could not be diminished by deducting therefrom any of the component factors of cost which were considered by the seller in arriving at the total figure charged the purchaser. This means that, in arriving at the taxable cost price in the instant case, any freight charges incurred by the seller in bringing the personalty to *416 the out of state point at which the sale to the relator was consummated and title delivered to the relator could not be deducted from the price charged and paid by the purchaser so as to reach a lower taxable cost price. The cases of Gee Coal Co. v. Department of Finance, 1935, 361 Ill. 293, 197 N.E. 871, 102 A.L.R. 766, and State v. Menefee Motor Co., 1932, 18 La. App. 694, 139 So. 61, support the reasonableness and logic of this construction.
That the freight charges paid by the relator after consummation of the purchase by it are not taxable as a part of the cost price or purchase price is supported by the cases of Dain Manufacturing Co. of Iowa v. Iowa State Tax Commission, 1946, 237 Iowa 531, 22 N.W.2d 786; Ford J. Twaits Co. v. Utah State Tax Comm., 1944, 106 Utah 343, 148 P.2d 343; Whitehill Sand & Gravel Co. v. State Tax Comm., 1944, 106 Utah 469, 150 P.2d 370; and State v. Natco Corp., 1956, 265 Ala. 184, 90 So.2d 385. In addition the case of Bloxhom v. Henneford, 1938, 193 Wash. 540, 76 P.2d 586 reaches the same conclusion that transportation charges paid by the purchaser after consummation of the purchase are not part of the purchase price. The respondent cites no cases to the contrary.
We therefore conclude that, under the plain wording of Sec. 212.06(1), F.S.A., the construction which we place on Sec. 212.02(5) and Sec. 212.05(2), F.S.A., and a consideration of the whole of Chapter 212, freight charges incurred by a purchaser after the moment of purchase are not a part of the cost price for purposes of computing use taxes.
Respondent relies upon his Rule 91(7) for authority to assess and collect the disputed tax on the freight charges here involved. This rule reads as follows:
"The actual cost of articles shipped into this State includes the basic cost price plus any freight and Federal transportation tax thereon and handling charges. Under Section 212.02(5), the 3% Use Tax is imposed upon the entire cost of bringing a piece of property into the State and allowing same to become a part of the mass of the State."
This rule is clearly in conflict with what we have said above and must fall as applied to a situation such as exists in this case.
We have considered respondent's Administrative Rule M-1, as it existed prior to and after its revision on March 28, 1956, and feel it sufficient to say that it must be construed and applied in accordance with this opinion.
We make clear that the decision we have reached as to the non-taxability of the freight charges is predicated on the fact that the purchase of the personalty transported was consummated and title passed to the relator prior to the occurrence of the freight charges. If the purchase had been f.o.b. a point in Florida the freight charges might well have been included as a part of the cost or purchase price and therefore taxable, but the issue is not before us and we do not decide it now.
In accordance with the above, the alternative writ of mandamus is quashed insofar as it relates to the tax imposed on "machinery and equipment" and on the items of miniature samples and advertising brochures under "advertising", but the motion to quash is denied as to the tax, penalties and interest imposed on technical manuals under "advertising" and on "freight". The respondent shall have ten (10) days in which to file a return to that portion of the writ not quashed, if he so desires, otherwise a peremptory writ shall issue.
It is so ordered.
TERRELL, C.J., and THOMAS, HOBSON and ROBERTS, JJ., concur.