JOHNSON COUNTY FARM BUREAU
COOPERATIVE ASSOCIATION,
INC., Petitioner,

v.

The INDIANA DEPARTMENT OF
STATE REVENUE, Respondent.

No. 49T05–8912–TA–00066.

Tax Court of Indiana.

March 21, 1991.

Michael J. Rusnak, Peter H. Donahoe, Locke Reynolds Boyd & Weisell, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. of Indiana by Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Johnson County Farm Bureau Cooperative Association, Inc. (Johnson County) appeals the Indiana Department of Revenue's (Department) denial of its claims for refund. Johnson County claimed refunds of gross income taxes, penalties, and interest initially in the amount of $10,640.17 for the calendar years 1979, 1980, 1981, and subsequently in the amount of $9,102.89 for 1983, 1984, and 1985.

During the assessment period, Johnson County, an agricultural membership cooperative, was a grain dealer engaged in the business of selling feed, fertilizer, seed, fuel oil, garden supplies, tools, and other agricultural items as well as receiving, processing, storing, and merchandising whole grain and soybeans. Johnson County reported its gross income tax liability on a "gross earnings" basis pursuant to the grain dealer statute in effect for the years at issue, IC 6–2–1–1 for 1979, 1980, and 1981 and IC 6–2.1–1–5 for 1983, 1984, and 1985 (Grain Dealer Statutes). Johnson County claimed in its Petition for Original Tax Appeal filed on December 14, 1989, that the Department erroneously computed

Johnson County's gross income tax liability by not deducting the cost of shipping whole grain and soybeans to its customers (freight-out) as part of the "cost of the whole grain and soybeans" as provided in the Grain Dealer Statutes.

## ISSUE

The sole issue raised is whether the Department erred by denying Johnson County a deduction for freight-out costs when computing its gross earnings under the Grain Dealer Statutes.

## DISCUSSION AND DECISION

■ Johnson County asserts that the phrase "cost of the whole grain and soybeans" as used in the Grain Dealer Statutes includes the cost of freight-out expenses. The 1971 Grain Dealer Statute, governing the years 1979, 1980, and 1981, defined gross earnings as, "gross receipts of such whole grain and soybeans, less the *cost of the whole grain and soybeans*, sold during such period, without any deductions of any other kind or character. IC 6-2-1-1(q) (emphasis added). The 1981 recodification of the Grain Dealer Statute, governing the years 1983, 1984, and 1985, defined gross earnings as, "the gross receipts from the sales of whole grain and soybeans, less the *cost of the whole grain and soybeans*, without any deductions of any other kind or character." IC 6-2.1-1-5 (emphasis added).

## A. AMBIGUITY

■ The Grain Dealer Statutes do not define "cost of the whole grain and soybeans." If the meaning of a statute's language is reasonably susceptible to more than one construction, the court will construe the statute to determine the apparent legislative intent. *Gary Community Mental Health Center, Inc. v. Indiana Dep't of Public Welfare* (1987), Ind.App., 507 N.E.2d 1019, 1022 (citing *Frame v. South Bend Community School Corp.* (1985), Ind.App., 480 N.E.2d 261, 263). Johnson County and the Department offer different interpretations of the phrase "cost of the whole grain and soybeans," nevertheless,

"simple disagreement between the parties does not necessarily constitute ambiguity." *Indianapolis Public Transportation Corp. v. Indiana Dep't of Revenue* (1987), Ind.Tax, 512 N.E.2d 906, 908, *aff'd*, 550 N.E.2d 1277 (1990). The court is persuaded ambiguity exists, however, when parties advance well reasoned, albeit differing, theories about a statute's meaning. *Public Transportation*, 512 N.E.2d at 908.

The phrase "cost of the whole grain and soybeans" is capable of at least two interpretations. First, "cost" could include, as the Department argues, the amount paid for the grain plus acquisition expenses. Second, "cost" could include, as Johnson County asserts, the total amount incurred in order to sell the grain, the price of the grain itself, freight-in, and freight-out. Both interpretations are reasonable and can be supported by authority. Accordingly, the court finds the statute ambiguous and appropriate for judicial interpretation.

## B. STATUTORY CONSTRUCTION

■ The intent of the legislature embodied in a statute constitutes the law. *Wedmore v. State* (1954), 233 Ind. 545, 551, 122 N.E.2d 1, 4 (citing *State ex rel. Rogers v. Davis* (1951), 230 Ind. 479, 482, 104 N.E.2d 382; *Haynes Automobile Co. v. City of Kokomo* (1917), 186 Ind. 9, 12, 114 N.E. 758; *Thorn v. Silver* (1909), 174 Ind. 504, 515, 89 N.E. 943; *City of Lebanon v. Dale* (1943), 113 Ind.App. 173, 178, 46 N.E.2d 269). The foremost goal of statutory construction therefore is to determine and give effect to the true intent of the legislature. *Scheid v. State Bd. of Tax Comm'rs* (1990), Ind.Tax, 560 N.E.2d 1283, 1286 (quoting *Park 100 Dev. Co. v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220, 222). The legislature enacted statutory rules of construction as aids in determining the legislature's intended meaning. *W.H. Dreves, Inc. v. Osolo School Township of Elkhart County* (1940), 217 Ind. 388, 395, 28 N.E.2d 252, 254. "The construction of all statutes of this state shall be by the following rules, unless such a construction is plainly repugnant to the intent of the legislature or of

the context of the same statute." IC 1–1–4–1. Thus, the rules of construction have effect only to the extent they uncover the legislature's intent from the statute's context.

### 1.

■ "Words and phrases shall be taken in their plain, or ordinary and usual, sense. But technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." IC 1–1–4–1(1). It is axiomatic in Indiana that the plain, ordinary, and usual meaning of non-technical words in a statute is defined by their ordinary and accepted dictionary meaning. *See Hatcher v. Indiana State Bd. of Tax Comm'rs* (1990), Ind.Tax, 561 N.E.2d 852, 854; *Scheid*, 560 N.E.2d at 1286; *State Dep't of Revenue v. Bethel Sanitarium, Inc.* (1975), 165 Ind.App. 421, 425, 332 N.E.2d 808, 811. The word "cost" has an ordinary and accepted meaning. "Cost" is defined by WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 515 (1981) as, "the amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for service rendered: CHARGE, PRICE." Consequently, the plain, ordinary, and usual dictionary meaning of "cost" includes only the expenses of acquiring a property, such as freight-in, but not the expenses of selling a property, such as freight-out.

### 2.

■ Determining the meaning the legislature intended, however,

> involves far more than picking out dictionary definitions of words or expressions used. Consideration of the context and the setting is indispensable properly to ascertain a meaning. In saying that a verbal expression is plain or unambiguous, we mean little more than that we are convinced that virtually anyone competent to understand it, and desiring fairly and impartially to ascertain its signification, would attribute to the expression in its context a meaning such as the one we derive, rather than any other; and would consider any different meaning, by comparison, strained, or farfetched, or unusual or unlikely.... Implicit in the finding of a plain, clear meaning of an expression *in its context*, is a finding that such meaning is rational and 'makes sense' in that context.

*Hutton v. Phillips* (1949), 45 Del. 156, 160, 70 A.2d 15, 17 (emphasis added).

"[W]ords and phrases should be taken in their plain, ordinary and usual sense, unless such a construction is plainly repugnant to the intent of the legislature or the context of the statute," *Scheid*, 560 N.E.2d at 1286, or a contrary purpose is clearly shown by the statute itself. *Marion County Sheriff's Merit Bd. v. Peoples Broadcasting Corp.* (1989), Ind., 547 N.E.2d 235, 237 (citing *Clipp v. Weaver* (1983), Ind., 451 N.E.2d 1092; *Overlade v. Wells* (1955), 234 Ind. 436, 127 N.E.2d 686). Since words that have one meaning in a particular context frequently have a different meaning in another context, it is necessary to consider the context to determine the significance of the words used in a statute. *United States v. Raynor* (1938), 302 U.S. 540, 58 S.Ct. 353, 82 L.Ed. 413, *rev'g* 89 F.2d 469, *cert. granted*, 302 U.S. 667, 58 S.Ct. 21, 82 L.Ed. 514. Accordingly, "legislative intent as ascertained from an Act as a whole will prevail over the strict literal meaning of any word or term used therein." *Scheid*, 560 N.E.2d at 1286 (quoting *Park 100*, 429 N.E.2d at 222). The word "cost" as used in the Grain Dealer Statutes must be construed therefore according to its common dictionary meaning unless that meaning is repugnant to the legislature's intended statutory purpose, considering the context of the statute.

### 3.

The parties agree the purpose of the Grain Dealer Statutes is to provide special tax consideration through a specific deduction intended to benefit grain dealers. Uncommon to most other taxpayers, grain dealers traditionally operate on low profit margins, do not pay freight-in costs, but do pay freight-out costs. When a buyer pays for grain, a large component of the grain

dealer's gross receipts represents a reimbursement for his freight-out costs. Therefore, if only acquisition costs, including freight-in, were deductible when computing gross earnings, as the Department urges, the Grain Dealer Statutes would confer little or no benefit to grain dealers. Taxable gross earnings would not fairly represent grain dealer's actual gross earnings. Indeed, gross income tax would be assessed on freight-out costs, forcing higher prices or lower profit on sales to more distant customers. The tax driven disincentive may interfere with the grain dealer's ordinary business decisions, *e.g.*, a grain dealer may decide, for purely tax reasons, not to sell grain to distant buyers. Johnson County contends that these burdens are ones the legislature intended the Grain Dealer Statutes to alleviate. Although the court may not broaden a statute's language beyond its legitimate limits in consideration of hardship, *Gallagher v. Marion County Victim Advocate Program, Inc.* (1980), Ind.App., 401 N.E.2d 1362, 1364 (citing *Fidelity & Casualty Co. v. Miller* (1942), 111 Ind.App. 308, 38 N.E.2d 279, 281), moderation of hardship is the legitimate purpose of the Grain Dealer Statutes.

### 4.

The Indiana Gross Income Tax Act, IC 6–2.1, imposes tax on gross income with few or no deductions whatsoever. When deductions are permitted, however, they are intended to be specific and narrow. *See Indiana Dep't of State Revenue v. Food Marketing Corp.* (1980), Ind.App., 403 N.E.2d 1093, 1099–101 (Staton, J., dissenting). The Department asserts that the words of limitation "without any deductions of any other kind or character" modifying the phrase "cost of the whole grain and soybeans" indicate that the legislature intended deductions, when permitted, to be narrow and specific in light of the purpose of the Indiana Gross Income Tax Act, to tax gross receipts with few or no deductions. Accordingly, the Department argues that Johnson County's attempt to deduct freight-out is an impermissible enlargement of the deduction intended by the legislature. The court, however, may enlarge or restrict the application of words used in a statute according to the intent of the legislature. *J. Wooley Coal Co. v. Tevault* (1918), 187 Ind. 171, 185, 118 N.E. 921, 925 (citing *Storms v. Stevens* (1885), 104 Ind. 46, 50, 3 N.E. 401; *Maxwell v. Collins* (1856), 8 Ind. 38, 40). The legislature intended the words "without any deductions of any other kind or character" to restrict the permitted deductions to the "cost of the whole grain and soybeans," but did not intend them to restrict the meaning of the word "cost" as used in the Grain Dealer Statutes.

### 5.

The Department, citing *Estate of Pfeiffer v. Henry* (1983), Ind.App., 452 N.E.2d 448, 452, further contends that the Grain Dealer Statutes provide a deduction, and since a deduction is similar to an exemption, it must be strictly construed in favor of taxation and against exemption. The Indiana Court of Appeals found that deductions permitted in the 1971 Financial Broker Statute, IC 6–2–1–1, did not constitute an exemption from gross income tax, *Indiana Department of State Revenue v. Boswell Oil Co.* (1971), 148 Ind.App. 569, 573, 268 N.E.2d 303, 306, and likewise in *Indiana Department of State Revenue v. Stark–Wetzel & Co.* (1971), 150 Ind.App. 344, 356, 276 N.E.2d 904, 911, found that the 1971 Wholesale Grocer Statute did not afford an exemption. It follows that the analogous Grain Dealer Statutes do not provide an exemption from gross income tax. Instead, the Grain Dealer Statutes are tax-levying statutes, and as such are construed against the state and in the taxpayer's favor, *State Board of Tax Commissioners v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920, 921 (citing *State Department of Revenue v. Estate of Eberbach* (1989), Ind., 535 N.E.2d 1194, 1196), and the construction of "cost" most favorable to the taxpayer, Johnson County asserts, includes a deduction for "freight-out."

### 6.

The legislature used the word "cost" in the Grain Dealer Statutes rather than the limiting words "purchase price,"

as it did in the adjacent Specific Margin Statutes, IC 1971, 6–2–1–1(r) and IC 1981, 6–2.1–1–7. "There is a strong presumption that the legislature, in enacting a statute, has full knowledge of existing legislation on the same subject matter." *Blood v. Poindexter* (1989), Ind.Tax, 534 N.E.2d 768, 771 (citing *Morgan County Rural Elec. Members Corp. v. Indianapolis Power & Light Co.* (1973), 260 Ind. 164, 261 Ind. 323, 302 N.E.2d 776, 778). Johnson County therefore contends that the legislature did not use the words "purchase price" because it did not intend to restrict the word "cost" in the Grain Dealer Statutes to acquisition costs.

Although the court is not bound by the decisions of foreign jurisdictions, "when construing an Indiana statute for the first time, it is appropriate to look to the decisions of other states which interpret statutory language which is identical or of similar import." *Hatfield v. La Charmant Home Owners Ass'n* (1984), Ind.App., 469 N.E.2d 1218, 1221 (citing *Mckenna v. City of Ft. Wayne* (1981), Ind.App., 429 N.E.2d 662, 664). In *Bloxom v. Henneford* (1938), 193 Wash. 540, 76 P.2d 586, the Washington Supreme Court interpreted the language of a similar tax statute that imposed gross income tax on the gross earnings of agricultural products-brokers and defined gross earnings as "the gross proceeds of the sales less the amount of the *purchase price* paid for the products." *Id.* (emphasis added). The taxpayer tried to deduct transportation and other costs when computing gross earnings. The *Bloxom* court disallowed the deduction, stating that if the legislature had intended the tax to be imposed upon net income, it would have said so. Instead, the legislature limited the deduction to one kind of cost, purchase price. *Id.* at 543, 76 P.2d at 587–88. Similarly, the court finds that if the Indiana legislature intended to limit the deduction in the Grain Dealer Statutes to one type of cost, "purchase price," it would have used that phrase rather than the phrase "cost of the whole grain and soybeans." The court,

mindful that the language of a statute must be construed "in accordance with the clear and express purpose of the statute," *Gonser v. Board of Commissioners for Owen County* (1978), 177 Ind.App. 74, 78, 378 N.E.2d 425, 427 (citing *St. Germain v. State* (1977), 267 Ind. 252, 369 N.E.2d 931), cognizant of the consequences of construing "cost" literally, *Economy Oil Corp. v. Indiana Department of State Revenue* (1974), 162 Ind.App. 658, 664, 321 N.E.2d 215, 218 (citing *Boles v. State* (1973), 259 Ind. 661, 291 N.E.2d 357; *In re Annexation of Certain Territory* (1965), 138 Ind. App. 207, 212 N.E.2d 393; *Fogle v. Pullman Standard Car Manufacturing* (1961), 133 Ind.App. 95, 173 N.E.2d 668), and aware of the contextual requirements of the Grain Dealer Statutes, finds the common dictionary meaning of "cost," as only acquisition cost, "plainly repugnant" to the legislature's intent to provide a benefit to grain dealers. *See Scheid*, 560 N.E.2d at 1286; IC 1–1–4–1.

7.

"The language of a statute will be accepted in its ordinary and popular meaning unless so to do will manifestly result in the defeat of the legislative intent." *Vollmer v. Board of Comm'rs of Dubois County* (1913), 53 Ind.App. 149, 153, 101 N.E. 321, 322. Construing "cost" according to its ordinary meaning in the Grain Dealer Statutes would defeat the legislature's intent to benefit grain dealers. "Where such result would follow, words may be given a particular or technical meaning indicated by the act to be the sense in which they were employed, if by such interpretation the legislative intent may be carried into effect." *Id.* at 153, 101 N.E. at 322 (citing *Massey v. Dunlap* (1896), 146 Ind. 350, 358, 44 N.E. 641; *Starr v. Board of Comm'rs* (1906), 40 Ind. App. 7, 9, 76 N.E. 1025; *Hyland v. Rochelle* (1913), 179 Ind. 671, 100 N.E. 842); *see also* IC 1–1–4–1(1).

The legislature's intent to use the technical term of art [1] meaning for the word

---

**1.** "[A] term of art is ... one which is used in a particular field with a precise technical meaning." *Food Marketing*, 403 N.E.2d at 1098 (quot-

ing *Suwannee Fruit & Steamship Co. v. Fleming* (1947), Emer.Ct., 160 F.2d 897, 899).

"cost" in the Grain Dealer Statutes is not indicated through the use of "emphatic and repetitious language," *Indiana Department of State Revenue v. American Dairy of Evansville, Inc.* (1975), 167 Ind. App. 367, 373, 338 N.E.2d 698, 701, but instead, is revealed through contextual attributes of the statutes, such as the statutory purpose, the consequences of different constructions, and the legislature's choice of words in light of other alternatives. *See also Peru Cemetery Co. v. Mount Hope Cemetery of Peru* (1946), 224 Ind. 202, 207, 65 N.E.2d 849, 851.

In a 1944 United States Supreme Court case, Justice Frankfurter stated that words in a statute should have the same meaning as that commonly understood by the people the statute addresses:

> Legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him.

*Addison v. Holly Hill Fruit Products, Inc.* (1944), 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488.

The corollary is equally true that words in a statute expressed in technical terms should be construed to have the same meaning as that commonly understood by the particular industry addressed.

The phrase "cost of the whole grain and soybeans" in the Grain Dealer Statutes has a generally understood technical meaning in the grain dealer industry based on agribusiness accounting practices, financial reporting practices, and generally accepted accounting procedures (GAAP) standards within the industry. Grain dealers deduct freight-out expenses to more accurately reflect their gross earnings, since grain dealers traditionally bear the cost of freight-out on sales. This industry-wide practice prevents inaccurate inter-industry and intra-industry financial statement comparisons. Additionally, GAAP normally identifies the cost of freight as an expense item deducted from gross income resulting in net income; however, exceptions are authorized for certain specialized industries. The grain dealer industry is a specialized industry employing unique GAAP standards which reflect the industry's special accounting needs, permitting the deduction of freight-out in determining gross earnings.

The technical meaning of "cost" as used in the Grain Dealer Statutes must include a deduction for freight-out to comport with the generally understood meaning of "cost" within the grain dealer industry, the industry's GAAP standards, and the industry's external financial reporting method.

### 8.

A basic principle of statutory interpretation is that two statutes that apply to the same subject matter must be construed harmoniously, if possible. *Marion County Sheriff's Merit Bd.*, 547 N.E.2d at 237 (citing *Schrenker v. Clifford* (1979), 270 Ind. 525, 387 N.E.2d 59; *Bell v. Bingham* (1985), Ind.App., 484 N.E.2d 624). This rule is so important that it trumps all other rules of statutory construction. *Sheriff's Merit Bd.*, 547 N.E.2d at 237.

In *Food Marketing*, the court found that the meaning of the phrase "cost of the stock ... sold" in the 1971 Wholesale Grocer Statute [2] logically included expenses incurred to prepare items for resale. *Food Marketing*, 403 N.E.2d at 1096. The Grain Dealer Statutes and the Wholesale Grocer Statutes apply to the same subject matter, sharing similar purposes and statutory language. Each statute defines the target industry's gross income as "gross earnings" and permits specific deductions from gross income before a tax rate is applied. Because both statutes apply to the same subject matter, their meanings must be harmonious and not conflicting, if possible. *Sheriff's Merit Bd.*, 547 N.E.2d at 237. The phrase construed in *Food Marketing*, like the phrase at issue in the case at bar, identifies the only costs that are deductible from gross income in computing gross earnings. A construction of "cost of the whole grain and soybeans," which would include the deduction of freight-out, is harmonious and not conflicting with the *Food*

---

**2.** IC 6–2–1–1(s).

*Marketing* court's construction of the phrase "cost of the stock . . . sold" in the 1971 Wholesale Grocer Statute, IC 6–2–1–1(s).[3]

## C. EFFECT OF RECODIFICATION

The 1971 Grain Dealer Statute, IC 6–2–1–1(q), and the 1971 Wholesale Grocer Statute, IC 6–2–1–1(s), were recodified in 1981 as IC 6–2.1–1–5 and I.C. 6–2.1–1–4. The 1981 enactments of both statutes deleted the phrase, "sold during such period," part of the language the Court of Appeals construed in *Food Marketing*. Johnson County contends that the recodification did not change the substantive effect of either statute. The recodification statute states:

This act is intended to be a codification and restatement of applicable or corresponding provisions of the laws repealed by this act. If this act repeals and reenacts a law in the same form or in a restated form, the substantive operation and effect of that law shall continue uninterrupted.

1981 Ind. Acts 77 § 23(a).

In *Marion County Board of Review v. State Board of Tax Commissioners* (1987), Ind.Tax, 516 N.E.2d 1129, statutory language that had been relied upon and interpreted by the court was deleted from the subsequent enactment. This court found the deletion left the substantive effect of the statute unchanged since the subsequent statute was merely a codification and restatement of its predecessor. *Id.* at 1130–31.

■ The Department maintains, on the contrary, that the General Assembly purposefully omitted language the *Food Marketing* court used in construing the word "cost" broadly, expressing its intent that deductible "cost" be interpreted narrowly.

"When a statute on a subject contains certain language which is later deleted, statutory construction indulges in the presumption the legislature was cognizant of the presence and meaning of the language and intended by its deletion to change the law." *Frey v. Review Bd. of Indiana Employment Sec. Div.* (1983), Ind.App., 446 N.E.2d 1341, 1344 (citing *Pierce Governor Co. v. Review Bd. of Indiana Employment Sec. Div.* (1981), Ind.App., 426 N.E.2d 700, 703). A deletion of statutory language on a subsequent enactment will not be presumed to be an intentional change in the law if it was made merely to express more clearly the original intention of the legislature. *Monarch Steel Co. v. State of Indiana Tax Comm'rs* (1989), Ind.Tax, 545 N.E.2d 1148, 1152 (quoting *Indiana Dep't of State Revenue v. Cable Brazil, Inc.* (1978), 177 Ind. App. 450, 459, 380 N.E.2d 555, 559–60). One must look to the nature of the statute and to the purpose it was enacted to determine whether the deletion was intended to more clearly express the legislature's intent. *Monarch Steel,* 545 N.E.2d at 1152. The Grain Dealer Statutes and the Wholesale Grocer Statutes are both tax levying statutes. Their purpose is to assess tax while relieving possible unequal taxation of these industries which employ unique business practices. The legislature therefore intended the deletion of language in the 1981 reenactment merely as a more articulate expression of the legislature's true intent, not a change in the law. To find otherwise would frustrate the legislature's intent.

## D. EFFECT OF REGULATION 45 I.A.C. 1–1–75

If the language of a statute is ambiguous, as it is here, it is appropriate for the court to look "to a clarifying regulation or

---

**3.** The majority in *Food Marketing* stated that the word "cost" as used in the 1971 Wholesale Grocer Statute must be defined according to its unambiguous plain meaning since the legislature did not express an intent to give "cost" a technical meaning. The majority then proceeded, however, to determine the plain meaning based on the generally understood meaning of "cost" within the wholesale grocer industry, on GAAP standards in the industry, and on the

industry's external financial reporting methods. *Food Marketing,* 403 N.E.2d at 1096, 1097. Although this court's decision is harmonious with the majority's holding in *Food Marketing,* the court must call a spade a spade, agreeing with the reasoning of Judge Staton's dissent in *Food Marketing* that the majority indeed finessed the plain meaning rule of IC 1–1–4–1(1) by actually defining "cost" as a technical term of art.

one indicating the method of its application...." *First Nat'l Bank of Danville v. Reynolds* (1986), Ind.App., 491 N.E.2d 218, 222. The Department interprets the Grain Dealer Statutes, enumerating the deductions permitted in computing "gross earnings:"

> 'Gross earnings' is defined as the total receipts from the sale of all types of whole grains and soybeans sold during an annual period less the total cost of the raw product without any other deduction of any kind or character. 'Gross earnings' also includes the total income from storage, cleaning, service or handling charges, without any deductions whatsoever. *Transportation charges to the extent that they are included in the cost of acquiring the goods can be deducted in computing gross earnings.*

45 I.A.C. 1–1–75 (emphasis added).

■ The Department asserts that the above regulation identifies the only deductions permitted when computing gross earnings pursuant to the Grain Dealer Statutes. A rule issued by an agency pursuant to its statutory authority to implement the statute has the force of law. *Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue* (1988), Ind. Tax, 528 N.E.2d 867, 873. Accordingly, "an agency's interpretation of the statutory scheme it administers is entitled to judicial deference...." *City of Evansville v. Southern Indiana Gas & Elec. Co.* (1975), 167 Ind.App. 472, 496, 339 N.E.2d 562, 578. The Department contends that the regulation properly interprets the Grain Dealer Statutes by defining gross earnings as total receipts from the sale of whole grain and soybeans minus the total cost of the raw product, including freight-in costs, without any other deductions.

The court may use the same rules applicable to the rules of construction of a statute when construing administrative rules and regulations. *Rogers v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 398, 402 (citing *Don Meadows Motors, Inc. v. State Bd. of Tax Comm'rs* (1988), Ind. Tax, 518 N.E.2d 507, 508). "Accordingly, in examining the language used by the Department, ... [the court will] give effect if possible to every word and clause since ... [it is] presume[d] that all the language in the regulation was used intentionally." *Indiana State Dep't of Welfare v. Stagner* (1980), Ind.App., 410 N.E.2d 1348, 1352. "When certain words are specified in a statute, then, by implication, other words not specified are excluded." *City of Peru v. Utility Service Bd.* (1987), Ind.App., 507 N.E.2d 988, 992. The Department claims that the only way to give effect to every word in its regulation is to find that the regulation's specific reference to freight-in as deductible implies that other non-specified expenses are not deductible in computing gross earnings.

On the contrary, Johnson County asserts that an interpretation of the regulation that allows the deduction of freight-out is consistent with the language of the regulation. The regulation does not expressly forbid the deduction of other costs in computing gross earnings. Accordingly, without the express exclusion of other costs, Johnson County contends interpreting "total cost of the raw product" to include freight-out costs is compatible and not contrary to the language of the regulation.

■ Johnson County alternatively claims that regulation 45 I.A.C. 1–1–75 is invalid in light of *Food Marketing*. If a regulation conflicts with a case law interpretation, little weight is afforded the regulation. *United States v. U.S. Steel, Corp.* (7th Cir.1973), 482 F.2d 439, 448, *cert. denied*, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147. Additionally, an administrative interpretation that is incorrect is entitled to no weight. *Lake County Beverage Co. v. 21st Amendment, Inc.* (1982), Ind.App., 441 N.E.2d 1008, 1014 (citing *Beer Distribs. of Indiana v. ABC* (1982), Ind.App., 431 N.E.2d 836). The majority in *Food Marketing* held that the Wholesale Grocer Statute permitted deductions for expenses other than those included in the cost of acquiring the goods. Johnson County asserts that because the Wholesale Grocer Statutes and the Grain Dealer Statutes are analogous, judicial interpretation of the former is dispositive of the meaning of nearly

identical language in the later. Johnson County maintains that the legislature did not intend two different meanings for essentially the same statutory language contained in two sister statutes enacted for the same purpose. Thus, Johnson County concludes that if regulation 45 I.A.C. 1–1–75 is interpreted to restrict deductible costs to acquisition costs exclusively, the regulation is invalid to the extent it conflicts with the *Food Marketing* decision.

In *Indiana Department of State Revenue v. Best Ever Cos., Inc.* (1986), Ind. App., 495 N.E.2d 785, regulation 45 I.A.C. 1–1–77, which interpreted the meaning of "wholesale grocer" in the Wholesale Grocer Statute, was found invalid. *Id.* at 788. The court stated that the regulation added two new requirements that were not found in the statute the regulation purported to interpret, holding that the Department exceeded the scope of its authority granted by I.C.1976, 6–2–1–34(a), subsequently I.C. 1982, 6–8.1–3–3(a). *Id.* An administrative agency may adopt rules and regulations to enable it to put into effect the purposes of the law, "[b]ut it may not make rules and regulations inconsistent with the statute which it is administering, it may not by its rules and regulations add to or detract from the law as enacted, nor may it by rule extend its powers beyond those conferred upon it by law." *Id.* at 787 (quoting *Indiana Dep't of State Revenue v. Colpaert Realty Corp.* (1952), 231 Ind. 463, 479–80, 109 N.E.2d 415, 422–23); *see also Hatcher*, 561 N.E.2d at 857. The Department's asserted interpretation of regulation 45 I.A.C. 1–1–75 is inconsistent with the legislature's intent embodied in the Grain Dealer Statutes and the *Food Marketing* court's interpretation of the same language contained in the analogous Wholesale Grocer Statutes. As in *Best Ever*, the Department's regulation adds a new requirement not found in the statute, restricting the statute in a way not intended by the legislature. In so doing the Department exceeded the scope of its authority.

For the reasons discussed herein, the court finds that the phrase "cost of whole grain and soybeans" as used in the Grain Dealer Statutes includes freight-out costs. Accordingly, the court finds regulation 45 I.A.C. 1–1–75 invalid to the extent that the express mention of freight-in as deductible excludes freight-out as deductible when computing gross earnings pursuant to the Grain Dealer Statutes.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of Johnson County Farm Bureau Cooperative Association, Inc. Accordingly, the Department is ORDERED to refund gross income tax, interest, and penalties for the years at issue to Johnson County Farm Bureau Cooperative Association, Inc.

ORDERED.