**HORIZON BANCORP and First Citizens Bank, N.A., Petitioners,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9108–TA–00042.

Tax Court of Indiana.

Dec. 20, 1993.

Paul F. Lindemann, Jeffery S. Dorman and Garry R. Stamm, Krieg DeVault Alexander & Capehart, Indianapolis, for petitioners.

Pamela Carter, Atty. Gen., David A. Arthur and Jane E. Griffin, Deputy Attys. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioners, Horizon Bancorp, a bank holding corporation, and its subsidiary bank, First Citizens Bank, N.A., appeal the final determination of the Respondent, the Indiana Department of State Revenue (the Department), denying in part Horizon's claim for refund of excess bank tax credits. The matter is before the court on the parties' cross motions for summary judgment.

## ISSUES

I. Whether a taxpayer must carry over excess bank tax credits three years back and three years forward before filing a claim for refund to recover those credits.

II. Whether the limitations period for filing a claim for refund of bank tax credits commences in the year the right to claim a bank tax credit refund accrues.

III. Whether a taxpayer must apply current year bank tax credits against current gross income tax liability before "carryover" bank tax credits from previous years.

IV. Whether enterprise zone loan interest credits (loan credits) under IND.

CODE 6–3.1–7 are applied against gross income tax liability before or after bank tax credits are applied.

## FACTS

The parties have stipulated the following undisputed material facts. First Merchants National Bank, the predecessor of First Citizens Bank, began doing business as an Indiana corporation in 1873. In 1983, Horizon Bancorp was established as a bank holding company for First Merchants. Three years later, First Merchants National Bank and Citizens Bank merged, creating First Citizens Bank as the wholly owned subsidiary of Horizon Bancorp.[1]

During the years at issue, 1984 through 1989, Citizens operated as a national banking association in Indiana. In each of those years, Citizens' bank tax liability exceeded its gross income tax liability. Citizens also earned enterprise zone loan interest credits in the years at issue. Under statutes in effect at the time, both enterprise zone loan interest credits and bank tax payments were available as credits against gross income tax liability.

On April 9, 1991, Horizon filed its claim for refund seeking $968,283 in excess bank tax credits. On May 23, 1991, the Department issued Horizon a refund of $503,887 and $58,965 in interest. The Department denied the balance of the claim for refund, and Horizon initiated this appeal.

## DISCUSSION AND DECISION
### STANDARD OF REVIEW

■ The court reviews appeals from the Department *de novo* and is bound by neither the issues nor the evidence at the administrative level. *Maurer v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 607 N.E.2d 985, 986 (citing IND.CODE 6–8.1–9–1(d); *Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue* (1988), Ind.Tax, 528 N.E.2d 867, 869, *aff'd* (1991), Ind., 572 N.E.2d 481, *cert. denied* (1991), — U.S. —, 112 S.Ct. 337,

---

**1.** The court refers to all the corporations collectively as Horizon and to the banks themselves as Citizens.

116 L.Ed.2d 277). In a summary judgment case, though, this court, like any other Indiana court reviewing a motion under Ind. Trial Rule 56(C), views the evidence in the light most favorable to the non-movant. *See C & C Oil Co. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, 1379 (citing *Cromer v. City of Indianapolis* (1989), Ind.App., 540 N.E.2d 663, 666). Summary judgment may be granted only when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1224 (citing *C & C Oil Co.*, 570 N.E.2d at 1378).

## THE BANK TAX

This appeal hinges largely on the meaning of one statute, IND.CODE 6–2.1–4.5–1, which grants national banks a credit, in the amount of bank taxes paid, against gross income tax liability. The statute allows taxpayers to carryover excess credits from any given year to the three preceding and three succeeding years and to claim refunds of any unused credits. Citizens had excess credits in each year at issue, and it is the disposition of these credits that has generated the present dispute. To evaluate IC 6–2.1–4.5–1 in its proper context, the court briefly reviews the bank tax in general.

The bank tax, IND.CODE 6–5–10, has been part of Indiana's tax scheme for sixty years. *See* 1933 Ind. Acts, ch. 83, § 2. Its significance, however, has decreased dramatically in the wake of the 1990 passage of the financial institutions tax, which supplanted the bank tax for most taxpayers. *See* IND.CODE 6–5.5–1–1 through 6–5.5–9–5; *Fort Wayne Nat'l Corp. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 621 N.E.2d 668, 672. The bank tax is a 0.25 percent annual charge "on the value of all [a bank's] taxable deposits, taxable shares, and taxable surplus and profits."

IND.CODE 6–5–10–3(a). During the years at issue, the bank tax statutes defined a bank as a "(1) bank, trust company, savings bank, private bank, bank of discount and deposit, or loan and trust and safe deposit company organized under the law of this state; or (2) national banking association organized under the law of the United States and engaged in business in this state." IND.CODE 6–5–10–1.

Normally, banks pay the bank tax monthly to the treasurer of the county in which the bank is located.

> Except as provided in section 14 of this chapter, each bank shall, on the last day of each month, determine the tax on taxable deposits in the bank, taxable shares of the bank, and taxable surplus and profits of the bank. *Except as provided in sections 11 and 14 of this chapter,* the entity liable for the tax shall pay the tax to the treasurer of the county in which the bank is located before the twenty-first day of the following month.

IC 6–5–10–3(c) (emphasis added). If a bank intends to claim a refund of bank tax, however, Section 11 of IC 6–5–10 allows it to pay the tax directly to the Department, rather than the county treasurer, pending administrative and judicial review. "A taxpayer that intends to claim a refund under IC 6–8.1–9 of any tax imposed under this chapter may pay the tax and any interest or penalty to the department." IND.CODE 6–5–10–11.[2] IC 6–5–10–11 is not the only path to relief, however. In addition to the direct refund mechanism, the bank tax and gross income tax act as credits one against the other in certain circumstances.

IND.CODE 6–5–10–7 grants state chartered banks[3] credits against bank tax liability for gross income tax paid.

> (a) For purposes of this section, "taxable year" has the same meaning as the definition of taxable year contained in IC 6–2.1–1–15.
> (b) A bank that elects to pay the tax imposed by this chapter and that is not a

---

2. Section 14 of IC 6–5–10 sets imposition procedures for banks operating under liquidating agent supervision and is not relevant to the present case.

3. *See* IC 6–5–10–1.

national banking association is entitled to a credit against the tax in the amount of the tax paid by the bank under IC 6–2.1. *If the credit for a taxable year exceeds the amount of tax for which the bank is liable under this chapter for that taxable year*, the bank may claim the excess:

(1) *first*, against the tax that it paid under this chapter in any one (1) or more of the thirty-six (36) months that immediately precede the taxable year; and

(2) *second*, if additional excess credit remains, against the tax for which it is liable under this chapter in any one (1) or more of the thirty-six (36) months that immediately succeed the taxable year.

(c) Notwithstanding anything in this chapter or IC 6–2.1 to the contrary, the department shall pay to a taxpayer any refund to which the taxpayer is entitled that is attributable to a credit claimed under subsection (a).

IC 6–5–10–7 (emphasis added). On the other hand, as already mentioned, national banks receive credits against gross income tax liability for bank tax paid.

(a) A national banking association is entitled to a credit against the tax for which it is liable under this article in the amount of the tax paid by the association under IC 6–5–10. *If the credit for a particular taxable year exceeds the amount of tax for which the national banking association is liable under this article for that taxable year, the association may claim the excess:*

(1) *first*, against the tax that it paid under this article in any one (1) or more of the three (3) taxable years that immediately precede the particular taxable year; and

(2) *second*, if additional excess credit remains, against the tax for which it is liable under this article in any one (1) or more of the three (3) taxable years that immediately succeed the particular taxable year.

(b) Notwithstanding anything in this article or in IC 6–5–10 to the contrary, the department shall pay to a taxpayer any refund to which the taxpayer is entitled that is attributable to a credit claimed under subsection (a).

IC 6–2.1–4.5–1 (emphasis added). It is against this statutory backdrop that the present appeal arises.

## I

■ Horizon claims IC 6–2.1–4.5–1(a) required it to carry over its excess credits three years back and then three years forward before it could claim a refund. The Department counters that IC 6–2.1–4.5–1(b) allowed a refund at any time and that Horizon could have followed IC 6–5–10–11 had it wanted a bank tax refund. The answer lies in the intent of the legislature. The true intent of the legislature embodied in its statutes constitutes the law. *Harlan Sprague Dawley*, 605 N.E.2d at 1225 (citing *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 580–81, *aff'd* (1992), Ind., 585 N.E.2d 1336). In determining the legislature's intent, it is proper to take into account the history and development of the statute in question. *State v. Kuebel* (1961), 241 Ind. 268, 273, 172 N.E.2d 45, 47–48 (citing *Merchants' Nat'l Bank v. Delaware School Township* (1916), 185 Ind. 658, 666, 114 N.E. 450).

### A. Statutory Development

When the legislature enacted the gross income tax and the bank tax at the height of the Great Depression in 1933, it made no allowance for banks' potential liability for both taxes. Indeed, banks were expressly liable for the gross income tax as well as the bank tax. *See* 1933 Ind. Acts, ch. 83, § 16. It was not until 1939 that the offsetting credits began to appear. In that year, the legislature granted banks a credit against bank tax due, for gross income tax paid. *See* 1939 Ind.Acts, ch. 158, § 1. The credit applied to all banks and could be claimed on any bank tax return filed after the gross income tax was paid. *Id.* The credit structure did not change again until 1971, when the legislature adopted the mirror image credits for state and national banks now contained in IC 6–2.1–4.5–1 and IC 6–5–10–7. *See* 1971 Ind. Acts, P.L. 68,

§ 1. In 1975, the three year carry back and carry forward provisions for the credits appeared. *See* 1975 Ind. Acts, P.L. 65, § 5. In that same act, the legislature enacted the refund provisions now contained in IC 6–5–10–11. *See* 1975 Ind. Acts, P.L. 65, §§ 16, 18. 1975 marks the first appearance within the bank tax of a direct claim for refund provision and this appearance is critical when construed in light of the other 1975 changes.

From 1939 to 1971, banks could claim their gross income tax credits on *any* subsequent bank tax return. 1939 Ind. Acts, ch. 158, § 1. From 1971 to 1975, national banks could claim their bank tax credits against gross income tax liability on *any* subsequent gross income tax return, while state banks could claim their gross income tax credits against bank tax liability on *any* subsequent bank tax return. IND. CODE 6–5–6–11 (1971) (codifying 1971 Ind. Acts, P.L. 68, § 1). In 1975, however, the legislature limited the time period in which banks could use the credits, requiring banks first to carry over their credits back three years and then forward three years. *See* 1975 Ind. Acts, P.L. 65, § 5. Consequently, banks, for the first time, faced the possibility they might have excess credit that could not be refunded. The legislature therefore also added the language, now in IC 6–2.1–4.5–1(b) and IC 6–5–10–7(c), requiring the Department to pay refunds "attributable to" the credits, regardless of anything contrary in the bank tax act or the gross income tax act. *Id.* Prior to 1975, there was no need to provide for a refund of credits because the credits could be claimed on *any* subsequent return. Here lies the flaw in the Department's argument.

## B. Statutory Construction

The Department claims Horizon could either have followed IC 6–5–10–11 if it intended to claim a refund or it could have simply claimed a refund at any time under IC 6–2.1–4.5–1. The court must construe these sections, passed in the same act and covering the same subject matter, in light of one another and give full effect to each

statutory word and phrase. *Harlan Sprague Dawley*, 605 N.E.2d at 1225 (citing *Guinn v. Light* (1990), Ind., 558 N.E.2d 821, 823). Because the intention of the legislature embodied in its statutes constitutes the law, *id.*, (citing *Johnson County Farm Bureau Coop. Ass'n*, 568 N.E.2d at 580–81), the primary task in construing a statute is always to ascertain and give effect to the true intention of the legislature. *Id.*

As the history of these statutory provisions demonstrates, the remedies they create are not interchangeable and credits are not refundable before the three year carry-over term expires. IC 6–5–10–11 contemplates a claim for refund of excess bank tax paid as an absolute matter. A taxpayer's entitlement to a refund under IC 6–5–10–11 is not contingent on any other tax liability: if a taxpayer believes it has paid too much bank tax, it may seek a refund.

IC 6–2.1–4.5–1, on the other hand, creates bank tax credits that exist only as offsets against gross income tax liability. *A fortiori*, the refund of any of those credits is possible only after they have been fully used as offsets. For many years, there was no provision for a refund of these credits or their antecedents because they could be used until they were exhausted. When the legislature imposed the carry-over limit on the credits in 1975, it also created a refund mechanism to allow recovery of any excess credits. At the same time, the legislature created a refund mechanism independent of gross income tax liability.

To say in this context, as the Department does, that Horizon should have claimed its refund before 1991 contravenes several rules of statutory construction. First, the intent of the legislature in enacting the current version of IC 6–2.1–4.5–1 was to ensure the refundability of excess credits that could have been used as credits under the statute's earlier versions. It was not, as the Department's argument implies, to give national banks free rein in the use and refund of their credits.

■ Second, the Department's view of IC 6–2.1–4.5–1 and IC 6–5–10–11 nullifies the distinction between the two. As already discussed, IC 6–5–10–11 provides for a refund of excess bank tax regardless of other tax liability, while IC 6–2.1–4.5–1 creates credits against gross income tax liability for bank tax paid and allows a refund of those credits. If, however, IC 6–2.1–4.5–1(b) were construed as a mere restatement of IC 6–5–10–11, it would lose its independent vitality and its command that credit refunds be given notwithstanding contrary provisions in IC 6–5–10 would become meaningless. The court must construe statutes to give effect to all statutory language and cannot presume a nullity. *Fort Wayne Nat'l Corp.*, 621 N.E.2d at 675 (citing *Monarch Steel Co. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 611 N.E.2d 708, 713).

■ Finally, the Department ignores the plain meaning of the language in the statutes. As will be discussed in Section III, *infra,* subsection (a) of IC 6–2.1–4.5–1 creates a credit against current liability and allows any excess to be carried back three years "first" and forward three years "second." Subsection (b) of the statute then requires the Department to pay a taxpayer any refund "attributable to a credit claimed under subsection (a)." IC 6–5–10–11 provides a remedy for "a taxpayer that *intends* to claim a refund." (Emphasis added.) Simply put, it is impossible for a national bank to know in any given year whether it will use all its bank tax credits in that year, during the carry-over term, or not at all. Within the context of gross income tax liability, there can be no intent to claim a refund until the carry-over term expires.

IC 6–2.1–4.5–1 is plain and unambiguous: a national bank may use its bank tax payments as credits against gross income tax liability for a given tax year, the preceding three years, and the succeeding three years. Only after the succeeding three years may the national bank claim a refund of any excess credit.[4]

## II

The disposition of the second question follows necessarily from the disposition of the first. Horizon filed its claim for refund on April 8, 1991. The Department seeks to bar Horizon's claims for credits originally arising from 1984 through early 1988 as outside the three year limitations period of IND.CODE 6–8.1–9–1, which provides in pertinent part:

(a) If a person has paid more tax than the person determines is legally due for a particular taxable period, the person may file a claim for a refund with the department. In order to obtain the refund, the person must file the claim with the department within three (3) years after the latter of the following:

(1) The due date of the return.

(2) The date of payment.

The Department claims any bank tax payments Citizens made or should have made more than three years before Horizon filed its April 8, 1991, claim for refund are not now recoverable. Bank tax is paid monthly, IC 6–5–10–3, and the Department is correct that all the bank tax Citizens paid before April 8, 1988, was paid more than three years before Horizon filed the claim for refund. That calendrical fact, however, does not dispose of the matter.[5]

---

**4.** The Department's position also creates a potentially heavy fiscal impact on local governments. Bank taxes support local governments. IND.CODE 6–5–10–12. If a taxpayer obtains a bank tax refund from the Department, the local government that received the bank tax payments must compensate the state treasury for the refund. IND.CODE 6–5–10–13.

If a national bank could claim a cash refund of its credits under IC 6–2.1–4.5–1 at any time, the local government that received the original bank tax payments would have to return those payments with interest whenever the bank re-

ceived a refund. By requiring national banks to use their credits fully against as much as seven years' gross income tax liability, IC 6–2.1–4.5–1 minimizes the actual cash refunds local governments have to pay.

**5.** As mentioned, the Department argues Horizon's claims for the early months of 1988, as well as all of 1984 through 1987, are not timely. The bank tax is due monthly. IC 6–5–10–3. For many taxes not due on an annual basis, IC 6–8.1–9–1 provides an effective due date of the end of the calendar year, but the bank tax is not

As the court has already held in Section I, *supra,* IC 6–2.1–4.5–1 and IC 6–5–10–11 create different rights. IC 6–5–10–11 allows taxpayers who intend to claim a bank tax refund to pay the Department directly, while IC 6–2.1–4.5–1 creates bank tax credits against gross income tax liability and prohibits taxpayers from claiming a refund of those credits before the three year carry-over term expires. In other words, the right to claim a refund of excess credits does not accrue until the carry-over term expires, and it is well settled in this state that the applicable statute of limitation does not begin to run until the legal right to bring a claim arises. *See, e.g., Fidelity & Cas. Co. v. Jasper Furniture Co.* (1917), 186 Ind. 566, 117 N.E. 258; *Raymond v. Simonson* (1835), 4 Blackf. 77, 96; *Kaletha v. Bortz Elevator Co.* (1978), 178 Ind.App. 654, 383 N.E.2d 1071.

Horizon's right to a refund of its excess 1984 bank tax credit did not arise until the amount of any excess could be determined, that is, until the carry-over term expired. The credits had to be carried back three years and then forward for as long as they lasted against the gross income tax liability of the three years immediately succeeding 1984–1985, 1986, and 1987. IC 6–2.1–4.5–1(a)(2). Calendar year 1987 gross income tax returns had to be filed by April 15, 1988, IND.CODE 6–2.1–5–2(b), and therefore IC 6–8.1–9–1 began to run against the 1984 bank tax credits on that date. Until Horizon knew its 1987 gross income tax liability, it simply did not know how much, if any, credit from 1984 would remain available for refund. The April 9, 1991, claim for refund, filed within three years from the due date of the 1987 gross income tax return, was therefore timely for 1984 [6] and all subsequent years.[7]

## III

## ORDER OF APPLICATION OF CREDITS

Horizon claims IC 6–2.1–4.5–1, in conjunction with IND.CODE 6–3.1–1–2, requires national banks to claim prior years' carryover bank tax credits against current gross income tax liability before claiming a current year's credits. Horizon is mistaken.

The command of IC 6–2.1–4.5–1 is clear. Horizon is entitled to a credit and *"[i]f the credit for a particular taxable year exceeds the amount of tax for which the national banking association is liable under this article for that taxable year,* the association may [then] claim the excess."* IC 6–2.1–4.5–1(a) (emphasis added). Current year credits offset current year liability; any excess credits are carried back three years if needed and then forward three years if needed.

included within that group and therefore the monthly bank tax payments do not receive the benefit of the December 31 effective due date.

**6.** If the Department's argument in Section I, *supra,* were correct, Horizon could still claim its credits from 1984 through March 1988. IC 6–2.1–4.5–1 gives national banks the right, regardless of whether that right creates an obligation, to use their bank tax payments as credits against gross income tax liability for the three years after the year paid and to then claim any excess.

The court will not construe the right created by IC 6–2.1–4.5–1 as a trap for the unwary. When construing statutes, Indiana courts "attempt to prevent absurdity and hardship and to advance the public convenience." *Superior Const. Co. v. Carr* (1990), Ind., 564 N.E.2d 281, 284 (citing *P.B. v. T.D.* (1990), Ind., 561 N.E.2d 749, 750; *Walton v. State* (1980), 272 Ind. 398, 398 N.E.2d 667).

**7.** Indeed, but for the enactment of the financial institutions tax (the FIT), the claim for refund of the credits arising in 1988 and 1989 would be premature. Had the old statutory relationship between bank tax and gross income tax for national banks gone unchanged, Horizon would have had to carry forward the 1988 credits to apply against the gross income tax liability for calendar years 1989–1991, and then seek a refund of any remainder. Similarly, it would have had to carry forward its 1989 credits through 1992.

But the old statutory relationship did change. With the promulgation of the financial institutions tax in 1990, bank holding companies like Horizon became liable for the FIT and exempt from gross income tax. IND.CODE 6–5.5–1–17; 6–5.5–2–1; 6–5.5–9–4(a)(1). And since Horizon was exempt from the gross income tax, there was no gross income tax liability against which the 1988 and 1989 credits could be offset, and the carry forward requirement became moot.

Neither does IC 6–3.1–1–2 afford Horizon any refuge. This statute establishes the general order of application of credits to tax liabilities and provides:

(a) The tax credits a taxpayer is entitled to shall be applied against the taxpayer's tax liabilities in the following order:

(1) First, credits which may not be refunded to a taxpayer nor carried over and applied against any tax liability for any succeeding taxable year.

*(2) Second, credits which may not be refunded to a taxpayer, but which may be carried over and applied against any tax liability for any succeeding taxable year.*

(3) Third, credits which will be refunded to a taxpayer to the extent the credit exceeds the tax liability it is to be applied against.

*(b) Credits described in subsection (a)(2) shall be applied against a taxpayer's tax liabilities so that the credits which may be applied to the fewest succeeding years are utilized first.*

IC 6–3.1–1–2 (emphasis added).

The interplay between the emphasized language in subsections (a)(2) and (b) is designed to ensure that non-refundable credits are used to their maximum benefit. As the court has already held, Horizon's excess bank tax credits under IC 6–2.1–4.5–1 are non-refundable until they have been carried over three years forward from any given year. Horizon therefore argues the excess credits fall within the ambit of subsection (a)(2) and are subject to the requirement of subsection (b) that oldest credits be applied first. With this feat of accounting legerdemain, Horizon hopes to increase its refund by a large amount. The delay of refundable status, however, is not tantamount to a denial of refundable status.

IC 6–2.1–4.5–1 plainly states that excess bank tax credits are refundable, regardless of any contrary language in the gross income tax act or the bank tax statutes. At the same time, IC 6–3.1–1–2(a)(2) refers to "credits which may not be refunded." To give this language the meaning Horizon ascribes would require the court to hold the legislature meant to say "credits which may not be refunded *in the tax year at issue.*" Additionally, subsection (a)(3) refers to "credits which will be refunded." It does not refer to "credits which will be refunded *in the tax year at issue.*"

Both IC 6–2.1–4.5–1 and IC 6–3.1–1–2(a) are plain and unambiguous, and the court declines Horizon's invitation to expand their plain meaning. The Department properly accounted for the credits by applying current credits against current liability first.[8]

### IV

Finally, the Department claims it erred when it applied Horizon's enterprise zone loan interest credits against Horizon's gross income tax liability before applying the bank tax credits. This is a slightly more subtle accounting argument than Horizon's in Section III, *supra,* but it is equally unavailing.

■ Loan credits are created by IND. CODE 6–3.1–7. "A taxpayer is entitled to a credit against [its] *state tax liability* for a taxable year" if it receives interest on a qualified loan. IND.CODE 6–3.1–7–2(a) (emphasis added). Within IC 6–3.1–7, "[s]tate tax liability" means a taxpayer's

---

**8.** The distinction in methods is critical. The parties have presented the court with relevant records from 1975 through 1989. In all but one of the years at issue, Horizon's bank tax payments exceeded its gross income tax liability. Indeed, using Horizon's method, the court has determined Horizon had sufficient carry forward credits in every year at issue never to use current credits.

The net effect of all this would be to abolish the limitations period, and this is true notwithstanding the disposition of the loan credits discussed in Section IV, *infra.* Using the proper method of applying current bank tax credits against current gross income tax liability for each year from 1975 through 1989, the sum total of those fifteen years' of bank tax credits exactly equals the sum total of the bank tax credits for the years at issue using Horizon's method.

Horizon was entitled to claim refunds of its 1975 through 1983 credits for up to three years after those credits accrued. IC 6–8.1–9–1. It did not, and it cannot now use an accounting mechanism contrary to statutory command to recapture those credits.

total tax liability that is incurred under: (1) IC 6–2.1 (the gross income tax).... (4) IC 6–5–10 (the bank tax) ... as computed *after the application of the credits that, under IC 6–3.1–1–2, are to be applied before the credit provided by this chapter."* IND.CODE 6–3.1–7–1 (emphasis added).

Like bank tax credits, current loan credits are applied against current liability and any excess credits are carried over. IND. CODE 6–3.1–7–3(a). They may be carried forward ten years from the time of the underlying loan, but unlike bank tax credits, they may not be carried back or refunded. *Id.* Because they cannot be refunded, they fall within subsection (a)(2) in the hierarchy of IC 6–3.1–1–2. Therefore, they must be applied before the refundable bank tax credits. IC 6–3.1–1–2(a)(3).

Notwithstanding loan credits' rank in the hierarchy, the Department claims IND. CODE 6–3.1–7–4(b) requires they be applied after the bank tax credits. IC 6–3.1–7–4 provides in pertinent part:

(a) A credit to which a taxpayer is entitled under this chapter shall be applied against taxes owed by the taxpayer in the following order:

(1) First, against the taxpayer's gross income tax liability (IC 6–2.1) for the taxable year.

....

(5) Fifth, against the taxpayer's bank tax liability (IC 6–5–10)....

(b) Whenever the tax paid by the taxpayer under any of the tax provisions listed in subsection (a) is a credit against the liability or a deduction in determining the tax base under another Indiana tax provision, *the credit or deduction shall be computed without regard to the credit to which a taxpayer is entitled under this chapter.*

IC 6–3.1–7–4 (emphasis added).[9] The Department and Horizon agree Horizon's loan credits must be applied to Horizon's gross

income tax liability, and that there is no question of any excess remaining to apply against bank tax liability. IC 6–3.1–7–4(a)(1) and (5).

 Because bank taxes, listed in subsection (a), act as credits against gross income tax liability, the Department contends the emphasized portion of subsection (b) requires the bank tax credits to be applied against gross income tax liability before the loan credits. At first blush, the Department's position appears to have no effect: the amount of excess credit remaining in any given year is the same regardless of whether the bank tax credit or the loan credit is applied first. The Department's position, however, determines the refundability of that excess credit. For example, in 1984, the first year at issue, Horizon's records reveal the following dollar amounts:

| | |
|---|---|
| Bank Tax Paid: | 172,367 |
| Gross Income Tax Liability: | 187,606 |
| Loan Credit: | 39,125 |

Regardless of whether the loan credit is subtracted from the gross income tax liability before or after the bank tax credit, an excess credit of $23,886 remains. But if the bank tax credits are applied against gross income tax liability first, the $23,886 credit remaining after applying the loan credit to the remaining $15,239 in gross income tax liability will be an excess loan credit, not an excess bank tax credit, and will therefore be nonrefundable.[10] The court rejects this result for three reasons.

First, the bank tax credit provisions are older enactments than the loan credit provisions, and the court must therefore presume the legislature was aware of the former when it enacted the latter. *Johnson County Farm Bureau Coop. Ass'n,* 568 N.E.2d at 583. Nowhere in the loan credit provisions is there language which would allow bank tax credits to negate loan credits, yet that is the precise effect of the

9. 1989 P.L. 80, modified IC 6–3.1–7–4 to delete the intangibles tax from subsection (a) and to make nonsubstantive changes to subsection (b), effective November 10, 1988.

10. In each of the succeeding years at issue, Horizon's bank tax payments exceeded its gross income tax liability. Therefore, the excess credit remaining in each year under the Department's method would consist of both loan credit and bank tax credit.

Department's reasoning, and would be an absurdity. If banks like Horizon, which consistently offset all, or almost all, of their gross income tax liability with bank tax credits were unable to get any use from any loan credits under IC 6–3.1–7, the banks would have no incentive to make qualifying loans and the loan credits would fail in their purpose. The court will not presume the legislature intended an absurd result in enacting IC 6–3.1–7. *See State ex rel. Hatcher v. Lake Superior Court, Room Three* (1986), Ind., 500 N.E.2d 737, 739 (citing *Northern Indiana Bank & Trust Co. v. State Board of Finance* (1983), Ind., 457 N.E.2d 527, 532).

Second, by its plain meaning, IC 6–3.1–7–4(b) refers only to the computation of other credits, not to their application *vis a vis* loan credits. More important, subsection (b) refers to computation "without regard to the credit to which a taxpayer is *entitled* under [IC 6–3.1–7]." Loan credits apply against "state tax liability." IC 6–3.1–7–2. Under the definition of "state tax liability" in IC 6–3.1–7–1, a taxpayer is entitled to a credit only after proper application of IC 6–3.1–1–2, which requires non-refundable credits like the loan credits to be applied before refundable credits like the bank tax credits.

Third, IC 6–3.1–7–4 and IC 6–3.1–1–2 both deal with the application of offsetting Indiana state tax credits, and the court must construe related statutes together, giving full meaning to each. *Harlan Sprague Dawley*, 605 N.E.2d at 1225 (citing *Guinn*, 558 N.E.2d at 823). IC 6–3.1–1–2(a) mandates that "[t]he tax credits a taxpayer is entitled to *shall be applied* against the taxpayer's tax liabilities in [accord with] the following order." (Emphasis added.) On the other hand, IC 6–3.1–7–4(b) states:

> (b) Whenever the tax paid by the taxpayer under any of the tax provisions listed in subsection (a) is a credit against the liability or a deduction in determining the tax base under another Indiana tax provision, *the credit or deduction shall be computed without regard to the credit*

*to which a taxpayer is entitled under this chapter.*

(Emphasis added.) The Department urges that the emphasized portions of the two statutes, though using different words, have the same meaning or effect. This cannot be. The statutes use different language, and the court will not erase the difference: each word must be given effect. *See Harlan Sprague Dawley*, 605 N.E.2d at 1225 (citing *Guinn*, 558 N.E.2d at 823). If the legislature had intended IC 6–3.1–7–4 to create a hierarchy of application of loan credits and other credits, it would have inserted language to that effect, as it did in IC 6–3.1–1–2(a). It did not, and the Department's present interpretation of IC 6–3.1–7–4(b) therefore fails: the Department properly applied Horizon's loan credits first.

## CONCLUSION

IC 6–2.1–4.5–1 requires current year bank tax credits to be applied against current year gross income tax liability. If the current year credits are less than gross income tax liability, prior or successive years' credits may be applied. If the credits exceed liability in a particular year, the excess credits must then be carried over to the preceding and succeeding three years. A taxpayer cannot claim a refund of any excess bank tax credits until the carry-over term expires, and it is at that time that the right to claim a refund accrues and the limitations period in IC 6–8.1–9–1 begins to run. Loan credits must be applied to gross income tax liability for a particular year before bank tax credits are applied.

Therefore, because there is no genuine issue of material fact on any of the legal questions the parties raise, and because each of the parties is entitled to judgment as a matter of law on certain questions, the court now GRANTS the Department's summary judgment motion on the question of whether IC 6–2.1–4.5–1 requires current credits to be applied against current liability first. The court DENIES summary judgment to the Department on the question of the application of IC 6–3.1–7 loan credits and GRANTS summary judgment

to Horizon on the Department's motion.[11] The court GRANTS Horizon's summary judgment motion on the question of whether it could claim a refund prior to the expiration of the three year carry-over term of IC 6–2.1–4.5–1 and the related question of when its right to claim a refund under IC 6–8.1–9–1 accrued.

There remains only the computation of the final refund and appropriate interest. The court now REMANDS that question to the Department to make the calculations in accord with this opinion. The court retains jurisdiction during the calculation period. There is no just reason for delay, however, on the questions already decided, and they are expressly entered as final judgments.

11. Horizon's motion did not raise the question of IC 6–3.1–7, but the court may properly grant summary judgment to a non-movant if there is no genuine issue of material fact and the non-movant is entitled to judgment as a matter of law. *C & C Oil Co.*, 570 N.E.2d at 1378 (citing *Indianapolis Pub. Transp. Corp. v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 906, 907, aff'd (1990), Ind., 550 N.E.2d 1277).