ATTORNEYS FOR PETITIONER:
**JAMES F. BEATTY**
**JESSICA L. FINDLEY**
**DONALD D. LEVENHAGEN**
**MEGAN M. PIAZZA**
**KATHRYN M. MERRITT-THRASHER**
LANDMAN BEATTY, LAWYERS, LLP
Indianapolis, IN

ATTORNEY FOR AMICI CURIAE:
**PAUL M. JONES, JR.**
PAUL JONES LAW, LLC
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JESSICA R. GASTINEAU**
**WINSTON LIN**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN



FILED

Oct 05 2016, 12:29 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| HAMILTON SQUARE INVESTMENT, LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 49T10-1505-TA-00018 |
| | ) |
| HAMILTON COUNTY ASSESSOR, | ) |
| | ) |
| Respondent. | ) |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**October 5, 2016**

FISHER, Senior Judge

Indiana's property tax caps provide taxpayers with credits against their Indiana property tax liabilities. See, e.g., IND. CODE § 6-1.1-20.6-7.5 (2016). The amount of a credit depends on, among other things, a property's classification (e.g., homestead, residential, agricultural, or nonresidential) and its overall gross assessed value. See

I.C. § 6-1.1-20.6-7.5.  This case concerns Hamilton Square Investment, LLC's claim that the Indiana Board of Tax Review erred in upholding the classification of its real property and, thus, the allocation of its tax cap credits for the 2012 tax year.  Hamilton Square is correct.

### FACTS AND PROCEDURAL HISTORY

Hamilton Square owns a 200-unit apartment complex situated on approximately 20 acres of land in Westfield, Indiana.  (See Cert. Admin. R. at 87, 102-45, 152.)  For the 2012 tax year, the Hamilton County Assessor assigned the property an overall gross assessed value of $5,030,900 ($1,411,000 for land and $3,619,900 for improvements).  (See Cert. Admin. R. at 102.)  In arriving at this valuation, the Assessor classified about 70% of the property as residential (i.e., the apartment buildings, attached balconies, and land thereunder) and 30% as nonresidential (i.e., the paving, storage/utility sheds, pool, clubhouse, and all remaining land).  (See Cert. Admin. R. at 149, 199-242.)  Pursuant to Indiana Code § 6-1.1-20.6-7.5, a 2% tax cap credit was then applied to the overall gross assessed value of Hamilton Square's residential property and a 3% tax cap credit was applied to the gross assessed value of its nonresidential property.[1]  (See Cert. Admin. R. at 149-51.)

Believing the Assessor had erred in classifying its property, Hamilton Square filed a Notice of Review with the Hamilton County Property Tax Assessment Board of

---

[1]  Indiana Code § 6-1.1-20.6-7.5 provided that the amount of a person's tax cap credit was:

> the amount by which the person's property tax liability attributable to the person's . . . residential property exceed[ed] two percent (2%)[ or its] . . . nonresidential real property exceed[ed] three percent (3%) . . . of the gross assessed value of [its] property that [was] the basis for determination of property taxes for that calendar year.

IND. CODE § 6-1.1-20.6-7.5(a)(2), (5) (2012).

Appeals (PTABOA) in May of 2013. The PTABOA, however, took no action on Hamilton Square's appeal. (See Cert. Admin. R. at 28.) As a result, on April 7, 2014, Hamilton Square filed a Petition for Review with the Indiana Board. The parties subsequently determined that the Indiana Board could resolve the matter by means of summary judgment without an administrative hearing. (See Cert. Admin. R. at 28.)

On August 1, 2014, the parties filed their briefs and designated evidence[2] with the Indiana Board to support their motions for summary judgment. In its brief, Hamilton Square claimed that it was entitled to judgment as a matter of law because the Assessor's classification of its property and the allocation of its 2012 tax cap credits contravened Indiana Code §§ 6-1.1-20.6-4 and 6-1.1-20.6-7.5. (See, e.g., Cert. Admin. R. at 90-97, 277-79.) More specifically, Hamilton Square asserted that the Assessor misclassified some of its residential property by "limit[ing] the term 'common areas' to those areas shared only by the actual dwelling units, such as common hallways, and not those areas shared by the residents." (See Cert. Admin. R. at 90-91.) The Assessor, on the other hand, asserted that she was entitled to judgment as a matter of law because her classification of Hamilton Square's property and the allocation of its tax cap credits comported with both statutes. (See, e.g., Cert. Admin. R. at 185-90, 267-68.)

On April 1, 2015, the Indiana Board issued its final determination upholding the Assessor's classification of Hamilton Square's property and the allocation of its tax cap credits for the 2012 tax year. (See Cert. Admin. R. at 35.) In so doing, the Indiana

---

[2] The Indiana Board's final determination provides that the Assessor submitted, but did not designate, her own affidavit as evidence. (See Cert. Admin. R. at 29.) The certified administrative record, however, reveals otherwise. (See Cert. Admin. R. at 193 (designating the affidavit of the Assessor as Exhibit A).)

3

Board explained that the Assessor's classification of Hamilton Square's property comported with both statutes because under Indiana Code § 6-1.1-20.6-4, "common areas shared by the dwelling units" were limited to the land and improvements within the footprint of a multi-unit apartment building. (See Cert. Admin. R. at 34-35.) Hamilton Square subsequently filed a petition for rehearing, but the Indiana Board declined to rehear the matter. (Cert. Admin. R. at 36-46.)

On May 15, 2015, Hamilton Square initiated this original tax appeal. The Court heard oral argument on January 22, 2016. Additional facts will be supplied if necessary.

## STANDARD OF REVIEW

The party seeking to overturn a final determination of the Indiana Board bears the burden of demonstrating its invalidity. Hubler Realty Co. v. Hendricks Cnty. Assessor, 938 N.E.2d 311, 313 (Ind. Tax Ct. 2010). The Court will reverse a final determination if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial or reliable evidence. IND. CODE § 33-26-6-6(e)(1)-(5) (2016).

## LAW

Indiana Code § 6-1.1-20.6 governs the computation and allocation of property tax cap credits. See generally IND. CODE §§ 6-1.1-20.6-0.3 to -12 (2016). During the 2012 tax year, Indiana Code § 6-1.1-20.6-4 (hereinafter, "the Residential Property Statute") defined "residential property," for purposes of this statutory scheme, as:

> (1) A single family dwelling that [was] not part of a homestead and the land, not exceeding one (1) acre, on which the dwelling

4

[was] located.

    (2) Real property that consist[ed] of:
       (A) a building that include[d] two (2) or more dwelling units;
       (B) any common areas shared by the dwelling units; and
       (C) the land, not exceeding the area of the building footprint,
          on which the building [was] located.

    (3) Land rented or leased for the placement of a manufactured
       home or mobile home, including any common areas shared
       by the manufactured homes or mobile homes.

IND. CODE § 6-1.1-20.6-4 (2012) (amended 2013). "Nonresidential property" was defined as real property that was 1) not a homestead or residential property and that 2) consisted of a building, any other land improvement, and the land under the footprint of the building or improvement. See IND. CODE § 6-1.1-20.6-2.5(1) (2012). Certain undeveloped land was also included in the definition of "nonresidential property." See I.C. § 6-1.1-20.6-2.5(2).

## ANALYSIS

On appeal, Hamilton Square claims that the Indiana Board erred when it limited the term "common areas," as used in the Residential Property Statute, to solely the land and improvements within the footprint of a multi-unit apartment building (e.g., hallways and stairways).[3] (See Pet'r Br. at 13 n.8.) Hamilton Square maintains that for purposes of the Residential Property Statute, common areas should also include land and improvements beyond an apartment building's footprint. (See, e.g., Pet'r Br. at 15-18.) (See also Amici Curiae Br. of Gene B. Glick Co., Dominion Realty, Inc., Samaritan Co., & Stygall Co. at 5-7.)

---

[3] Hamilton Square has also claimed that the Indiana Board's final determination violates the Indiana Constitution's "uniform and equal" requirement. (See Pet'r Br. at 25-27; Pet'r Reply Br. at 13-15.) The Court, however, need not address that issue because this case is resolved on statutory grounds. See, e.g., Bethlehem Steel Corp. v. Indiana Dep't of State Revenue, 597 N.E.2d 1327, 1330 (Ind. Tax Ct. 1992), aff'd by 639 N.E.2d 264 (Ind. 1994).

The Assessor, on the other hand, claims that the language of the Residential Property Statute unambiguously limited common areas to rental "building improvements" (e.g., stairways and hallways) and excluded "standalone structures" and their supporting land (e.g., clubhouses and sheds) just as the Indiana Board determined. (See Oral Arg. Tr. at 13-15; Resp't Br. at 7-8.) The Assessor explains that this is so because in using the restrictive phrase "shared by the dwelling units" to modify the phrase "any common areas," the Residential Property Statute focused on the actual dwelling units themselves and required the common areas to be "in physical proximity with the dwelling units." (See Resp't Br. at 5-8.) (See also Resp't Br. at 12-15 (asserting that another restrictive phrase, "not exceeding the area of building footprint," corroborated the physical proximity requirement).) The Court does not find persuasive the Assessor's argument that the terms "common area" and "footprint," as used in the Residential Property Statute, are interchangeable.

When a statute is susceptible to more than one interpretation, as it is here, it is ambiguous and subject to judicial construction. City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind. 2007). In construing a statute, the Court's primary goal is to determine and implement the intent of the Legislature in enacting the statute. See Bd. of Comm'rs of Cnty. of Jasper v. Vincent, 988 N.E.2d 1280, 1282 (Ind. Tax Ct. 2013). Generally, the best evidence of this intent is found in the actual language of the statute itself, as chosen by the Legislature. Washington Park Cemetery Ass'n v. Marion Cnty. Assessor, 9 N.E.3d 271, 273 (Ind. Tax Ct. 2014). Consequently, the Court will strive to give meaning to each and every word used in the Residential Property Statute because it will not be presumed that the Legislature intended to enact a statutory provision that is

6

superfluous, meaningless, or a nullity. See id.

As mentioned, Subsection (2) of the Residential Property Statute provides that "a building that includes two (2) or more dwelling units" is residential property. See I.C. § 6-1.1-20.6-4(2)(A). Logic dictates that the multi-unit apartment building referred to in Subsection (2) already consists of the building's hallways and stairways. Thus, confining common areas to the hallways and stairways of a multi-unit apartment building would render the portion of the Residential Property Statute concerning common areas superfluous (i.e., redundant). Accordingly, to give effect to the entire Residential Property Statute, "common area" must be understood to include land and improvements that are both attached to, and separated from, a multi-unit apartment building so long as the area is available for the shared use of tenants.[4] See, e.g., Cyril M. Harris, DICTIONARY OF ARCHITECTURE & CONSTRUCTION 214 (3d ed. 2000) (defining "common area" as "[a]n area either within a building or outside a building which is intended for use of all occupants of the building or a group of buildings, but not for the free use of the general public").

Moreover, when the sections of the Residential Property Statute are read in conjunction with one another rather than piecemeal, it is apparent that the Assessor has misconstrued the import of the restrictive phrase, "not exceeding the area of the building footprint" in Subsection 2(C) of the Residential Property Statute. (See Resp't Br. at 12-15.) See also Washington Park Cemetery, 9 N.E.3d at 273 (providing that statutes containing multiple parts should be read as a whole rather than piecemeal). Indeed, the

---

[4] In 2013, the Legislature amended Indiana Code § 6-1.1-20.6-4 and adopted Indiana Code § 6-1.1-20.6-1.2, which defined "common areas." See P.L. 288-2013 §§ 21-22 (eff. Jan. 1, 2014). While the parties dispute the applicability of these statutory provisions, (see, e.g., Pet'r Br. at 19-25; Resp't Br. at 8-13), the Court need not address the issue to resolve this matter.

phrase in Subsection 2(C), "the land, not exceeding the area of the building footprint, on which the building is located[,]" is linked to the rental dwelling unit (_i.e._, the building containing at least two dwelling units), not the common areas. See I.C. § 6-1.1-20.6-4(2). Similarly, the land restriction in Subsection (1), the acre of land surrounding "[a] single family dwelling that is not part of a homestead[,]" is linked to a single-family rental home that is not part of a homestead. See I.C. § 6-1.1-20.6-4(1). In turn, the land restriction in Subsection (3), "[l]and rented or leased for the placement of a manufactured home or mobile home," is linked to the manufactured home or mobile home rental. See I.C. § 6-1.1-20.6-4(3). Consequently, the actual structure and language of the Residential Property Statute does not limit common areas to an apartment building's footprint as the Assessor has argued. See Indiana Dep't of State Revenue v. Horizon Bancorp, 644 N.E.2d 870, 872 (Ind. 1994) (stating that "[n]othing may be read into a statute which is not within the manifest intention of the legislature as gathered from the statute itself" (citation omitted)).

## CONCLUSION

For the foregoing reasons, the final determination of the Indiana Board is REVERSED. This matter is REMANDED to the Indiana Board so that it may instruct the appropriate assessing officials to take actions consistent with this opinion.