ATTORNEY FOR PETITIONER:
**PAUL M. JONES, JR.**
PAUL JONES LAW, LLC
Greenwood, IN

ATTORNEYS FOR RESPONDENT:
**MARK E. GIAQUINTA**
**SARAH L. SCHREIBER**
HALLER & COLVIN, PC
Fort Wayne, IN

FILED
Feb 28 2020, 3:58 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

BUCKEYE HOSPITALITY DUPONT, LLC, )
nka SANDPIPER FORT WAYNE LLC, )
                                       )
     Petitioner, )
                                         )
         v. )  Case No. 19T-TA-00011
                                         )
STACEY O'DAY, in her official capacity as )
ALLEN COUNTY ASSESSOR, )
                                         )
     Respondent. )

---

## ON APPEAL FROM A FINAL DETERMINATION OF
## THE INDIANA BOARD OF TAX REVIEW

---

**FOR PUBLICATION**
**February 28, 2020**

WENTWORTH, J.

Indiana's property tax cap statutes provide taxpayers with credits against their Indiana property tax liabilities. See, e.g., IND. CODE § 6-1.1-20.6-7.5 (2020). The amount of the credit depends on, among other things, a property's classification (e.g., homestead, residential, agricultural, or nonresidential) and its overall gross assessed value. See I.C. § 6-1.1-20.6-7.5. Buckeye Hospitality Dupont, LLC n/k/a Sandpiper Fort Wayne, LLC's ("Buckeye") claims that the Indiana Board erred in upholding the classification of its real property as nonresidential and applying the 3% tax cap credit for the 2013 through 2016

tax years (the "years at issue").  Upon review, the Court affirms the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

During the years at issue, Buckeye owned a four-story building that contained 124 private rooms and was situated on approximately two acres of land in Fort Wayne, Indiana.[1]  (See Cert. Admin. R. at 73, 77-82, 669-80, 717 ¶ 5.)  Each room had an independent entrance from either the building's exterior or its interior public hallways and contained a private bathroom, nightstand, dresser, and color television with cable service.  (See Cert. Admin. R. at 73, 717 ¶ 5.)  Each room also contained a dining table with two chairs and a kitchenette with a full-sized refrigerator/freezer, two-burner stovetop, and microwave oven.  (See Cert. Admin. R. at 73, 717 ¶ 5.)

Individuals stayed at Buckeye's property for varying lengths of time.  (See Cert. Admin. R. at 73, 668, 717 ¶ 6.)  Buckeye did not require any guests to sign a lease to stay at its property.  (See Cert. Admin. R. 668, 717 ¶ 6.)  Most guests stayed for fewer than 30 days, but some stayed for 30 days or more ("long-term guests") during the years at issue.  (See Cert. Admin. R. at 73-74, 668, 717 ¶ 6.)  Buckeye did not reserve specific rooms or any of the property's public areas for the exclusive use of its long-term guests.  (See Cert. Admin. R. at 74, 668, 717 ¶ 6.)  Accordingly, all of Buckeye's guests had equal access to the property's amenities, including wi-fi, laundry facilities, and the parking lot.  (See Cert. Admin. R. at 74, 668, 717 ¶ 6.)

The Allen County Assessor assigned Buckeye's property a gross assessed value of $1,725,800 for 2013, $1,784,000 for 2014, $1,872,000 for 2015, and $1,965,000 for

---

[1]  In August 2016, Sandpiper Fort Wayne, LLC acquired the property at issue from Buckeye.  (See, e.g., Cert. Admin. R. at 684.)

2

2016.  (See Cert. Admin. R. at 77-82, 669-80.)  The Assessor classified the property as nonresidential property and applied the 3% tax cap credit to Buckeye's overall gross assessed value for each of those years.  (See Cert. Admin. R. at 77-82, 668-81.)

Believing the Assessor erred in classifying all of its property as nonresidential, Buckeye filed "Petitions for Correction of Error" ("Forms 133") with the Allen County Auditor for the 2013 tax year on May 12, 2017, and for the 2014 through 2016 tax years on July 17, 2017.  (See, e.g., Cert. Admin. R. at 1, 6, 12, 18.)  Buckeye claimed that the portion of its property annually occupied by long-term guests should have been classified as residential property and assigned the 2% tax cap credit for the years at issue.  (See, e.g., Cert. Admin. R. at 7, 74 (stating that long-term guests occupied 3% of the property in 2013, 4.74% in 2014, 15.19% in 2015, and 43.42% in 2016).)  By the end of September 2017, the Auditor, the Assessor, and the Allen County Property Tax Assessment Board of Appeals had denied all of Buckeye's Forms 133.  (See e.g., Cert. Admin. R. at 3, 8, 14, 20.)  As a result, Buckeye sought review by the Indiana Board on October 23, 2017.  (See e.g., Cert. Admin. R. at 4, 9, 15, 21.)  The parties subsequently agreed that the Indiana Board could resolve the matter by means of summary judgment without an administrative hearing.  (See Cert. Admin. R. at 52-54.)

On April 16, 2018, the parties filed cross-motions for summary judgment, supporting briefs, and designations of evidence.  (See, e.g., Cert. Admin. R. at 55-57, 665-82.)  Buckeye claimed, among other things, that it was entitled to judgment as a matter of law because the Indiana Board relied on the definition of the term "dwelling unit" that it had misinterpreted in a previous, related case.  (See, e.g., Cert. Admin. R. at 61-63  (citing, e.g., Buckeye Hosp. Dupont, LLC v. Allen Cty. Assessor, Pet. No. 02-072-09-

3

3-4-01319 (Ind. Bd. Tax Review Nov. 22, 2016)).)

The Assessor, on the other hand, asserted that she was entitled to judgment as a matter of law because Buckeye's claims were barred by the Indiana Board's prior ruling under the doctrines of administrative res judicata and stare decisis. (See Cert. Admin. R. at 659-60.) The Assessor also claimed that she should prevail as a matter of law because hotels were expressly excluded from the amended definition of "residential property." (See Cert. Admin. R. at 661-62.)

On March 11, 2019, the Indiana Board denied Buckeye's motion for summary judgment, explaining that its property was not "residential property" because: 1) it provided temporary accommodation as a hotel despite the fact that some guests chose to stay 30 days or longer; and 2) hotels were excluded by statute from the definition of "residential property" for purposes of Indiana's property tax caps. (See Cert. Admin. R. at 720-21 ¶ 14, 724 ¶ 27.) The Indiana Board declined to address the Assessor's administrative res judicata and stare decisis claims. (See Cert. Admin. R. at 719-20 ¶ 11.)

On April 24, 2019, Buckeye initiated this original tax appeal. Once fully briefed, the Court took the case under advisement on November 6, 2019. Additional facts will be supplied as necessary.

**STANDARD OF REVIEW**

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Hubler Realty Co. v. Hendricks Cty. Assessor, 938 N.E.2d 311, 313 (Ind. Tax Ct. 2010). Accordingly, Buckeye must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of

4

discretion, or otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence.  See IND. CODE § 33-26-6-6(e)(1)-(5) (2020).

**LAW**

Indiana Code § 6-1.1-20.6 governs the computation and allocation of Indiana's property tax cap credits.  See generally IND. CODE §§ 6-1.1-20.6-0.3 to -13 (2020) (the "Tax Cap Statutes").  In 2013, Indiana Code § 6-1.1-20.6-4 defined "residential property," for purposes of the Tax Cap Statutes, as:

> (1) A single family dwelling that is not part of a homestead and the land, not exceeding one (1) acre, on which the dwelling is located.
>
> (2) Real property that consists of:
>
>   (A)  a building that includes two (2) or more dwelling units;
>
>   (B)  any common areas shared by the dwelling units; and
>
>   (C)  the land, not exceeding the area of the building footprint, on which the building is located.
>
> (3) Land rented or leased for the placement of a manufactured home or mobile home, including any common areas shared by the manufactured homes or mobile homes.

IND. CODE § 6-1.1-20.6-4 (2013) (amended 2014) (the "Residential Property Statute").  In turn, "nonresidential property" was defined as real property that was 1) not a homestead or residential property and that 2) consisted of a building, any other land improvement, and the land under the footprint of the building or improvement.  See IND. CODE § 6-1.1-20.6-2.5(1) (2013).

Effective in 2014, however, the Legislature amended the definition of "residential

property." See P.L. 166-2014, § 4 (eff. Jan. 1, 2014). The amendment added, among other things, the following sentence to the end of the statute: "The term ["residential property"] does not include real property that consists of a commercial hotel, motel, inn, tourist camp, or tourist cabin." Id.

## ANALYSIS

On appeal, Buckeye contends that the Indiana Board's final determination must be reversed because it wrongly concluded that none of Buckeye's property was "residential property" within the meaning of the Residential Property Statute. (See generally Pet'r Br. at 4-11.) The Assessor, on the other hand, contends that Buckeye's claims are barred by the doctrine of administrative res judicata or, alternatively, that the Indiana Board's final determination should be upheld because it is consistent with the law. (See generally Resp't Br. at 8-19.)

## I. Administrative Res Judicata

As a threshold matter, the Assessor contends that the doctrine of administrative res judicata barred Buckeye's claims before the Indiana Board as a matter of law. (See Resp't Br. at 18-19.) More specifically, the Assessor contends that because the Indiana Board determined in its prior administrative proceeding that Buckeye's property was not "residential property," Buckeye should have been barred from relitigating that issue in the Indiana Board proceeding now under review. (See Resp't Br. at 18-19.)

The doctrine of administrative res judicata has been recognized in federal contexts by the United States Supreme Court:

> When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce

6

repose.

United States v. Utah Const. & Min. Co., 384 U.S. 394, 422 (1966) (citations omitted and emphasis added).  This doctrine has been applied in Indiana administrative contexts as well.  See, e.g., Weiss v. Indiana Family & Soc. Servs. Admin., Div. of Disability, Aging & Rehab. Servs., 741 N.E.2d 398, 402 (Ind. Ct. App. 2000), trans. denied; Watson Rural Water Co. v. Indiana Cities Water Corp., 540 N.E.2d 131, 135 (Ind. Ct. App. 1989), trans. denied; South Bend Fed'n of Teachers v. Nat'l Ed. Ass'n--South Bend, 389 N.E.2d 23, 32 (Ind. Ct. App. 1979).

"Given the unique nature of administrative proceedings, [] the doctrine of res judicata 'should be qualified or relaxed to whatever extent is desirable for making it a proper and useful tool for administrative justice.'"  Weiss, 741 N.E.2d at 402 (citation omitted).  A court must examine, however, whether:  "(1) the issues sought to be estopped were within the statutory jurisdiction of the agency; (2) the agency was acting in a judicial capacity; (3) both parties had a fair opportunity to litigate the issues; and (4) the decision of the administrative tribunal could be appealed to a judicial tribunal."  Id. (citation omitted).  Moreover, "'[t]he test generally applied when determining whether a suit is barred by [res judicata] is whether identical evidence will support the issues involved in both actions.'"  Id. (citation and internal quotation marks omitted).

Here, neither the transcript of proceedings nor the Indiana Board's final determination from the prior proceeding are contained in the administrative record or the designated evidence.  (See generally Cert. Admin. R.)  In addition, the designated evidence contains few details regarding the August 2016 acquisition of the subject property and the organizational structure of Buckeye and Sandpiper Fort Wayne, LLC.

7

(See Cert. Admin. R. at 69-654, 665-82.) Therefore, the Court cannot discern whether the Indiana Board's proceedings actually involved the same claims, the same evidence, and the same parties. Consequently, the Court will not reverse the Indiana Board's final determination on this basis.

## II. Residential Property

Buckeye contends that the Indiana Board's final determination must be reversed because its conclusion that none of Buckeye's property qualified as "residential property" is contrary to law. Buckeye does not take issue with the Indiana Board's definition of "dwelling unit," the term central to defining "residential property" under the Residential Property Statute. Instead, Buckeye claims that "[c]ontrary to its own sources, the Indiana Board arbitrarily created an unworkable test that required an inquiry of 'intent' for use [as a "dwelling unit"] rather than actual use." (See Pet'r Br. at 5-6.) Buckeye explains that the term "dwelling unit" should be understood, however, based on a property's actual use, and accordingly, the portion of Buckeye's property "used for more than 30 days by an occupant as a place to 'reside' and 'actually live'" is "residential property." (See Pet'r Br. at 7.) (See also Pet'r Reply Br. at 6-8.)

When a court is presented with a question of statutory construction its primary goal is to determine and implement the intent of the Legislature in enacting that statute. Hamilton Square Inv., LLC v. Hamilton Cty. Assessor, 60 N.E.3d 313, 317 (Ind. Tax Ct. 2016), review denied. The best evidence of this intent generally is found in the plain language of the statute itself, as chosen by the Legislature. Id. See also Johnson Cty. Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue, 568 N.E.2d 578, 581 (Ind. Tax Ct. 1991) (explaining that non-technical statutory words and phrases shall be

8

understood in their plain, ordinary, and usual sense), aff'd, 585 N.E.2d 1336 (Ind. 1992).

Statutory language that is susceptible to more than one interpretation or that contains an undefined term is generally considered ambiguous and subject to judicial construction. See Hamilton Square Inv., 60 N.E.3d at 317. Here, however, the Legislature enacted an amendment to the Residential Property Statute in 2013 that added language expressly stating its intended scope of the term "residential property" for purposes of the Tax Cap Statutes. See P.L. 166-2014, § 4 (adding "[a]s used in this chapter, 'residential property' . . . does not include real property that consists of a commercial hotel, motel, inn, tourist camp, or tourist cabin"). Moreover, the Fiscal Impact Statement to the amendment explains the purpose of the legislation: "The bill explicitly states that for the purposes of the property tax circuit breaker credit that a commercial hotel, motel, inn, tourist camp, or tourist cabin is not residential property. This is a clarification to the definition of residential property and should have no fiscal impact." (Cert. Admin. R. at 704, 708 (emphasis added).) See also City of Hammond v. Herman & Kittle Properties, Inc., 119 N.E.3d 70, 76-77 (Ind. 2019); Jennings v. State, 982 N.E.2d 1003, 1006-07 n.3 (Ind. 2013) (both indicating that fiscal impact statements may be used to reveal the purpose of a statutory amendment).) Accordingly, the Legislature's 2014 amendment to the Residential Property Statute applies to all the years at issue here by clarifying its original intent that hotels are excluded from the definition of "residential property" under the Residential Property Statute. See, e.g., Indiana Dep't of State Revenue v. Endress & Hauser, Inc., 404 N.E.2d 1173, 1175 (Ind. Tax Ct. 1980) (providing that where it appears the Legislature amends a statute to express its original intention more clearly, the normal presumption that an amendment changes a statute's meaning

9

does not apply). Consequently, if Buckeye's property is a hotel, its character alone, not its intended or actual use, is determinative of whether it is "residential property" for purposes of the property tax cap credit.

The Residential Property Statute does not define the word "hotel." See I.C. § 6-1.1-20.6-4. Non-technical, undefined words in a statute are to be given their ordinary and accepted dictionary meanings. See Johnson Cty. Farm Bureau Coop., 568 N.E.2d at 581. Webster's Dictionary defines "hotel" as "a house licensed to provide lodging and usu[ally] meals, entertainment, and various personal services for the public[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 1094-95 (2002 ed.). Webster's also states that a "hotel" is

> a building of many rooms chiefly for overnight accommodation of transients and several floors served by elevators, usu[ally] with a large open street-level lobby containing easy chairs, with a variety of compartments for eating, drinking, dancing, exhibitions, and group meetings (as of salesmen or convention attendants), with shops having both inside and street-side entrances and offering for sale items (as clothes, gifts, candy, theater tickets, travel tickets) of particular interest to a traveler, or providing personal services (as hairdressing, shoe shining), and with telephone booths, writing tables, and washrooms freely available[.]

Id. These definitions are consistent with the definition of "hotel" in Indiana's real property assessment guidelines as "[a] building designed for transient or semi[-]transient residential use. It is divided into furnished single rooms and suites, and has such accommodations as lounges, public dining rooms, and maid service." (Cert. Admin. R. at 668 ¶ 14, 682.)

Buckeye admits that a portion of its property is a commercial hotel, but claims that its entire property is not a hotel because some of its rooms accommodated guests for more than 30 consecutive days. (See Pet'r Reply Br. at 4.) The plain and ordinary meaning of the word "hotel," however, does not depend on the length of a guest's stay; it

10

merely requires that the property provides, among other things, overnight lodging to the transient public. See WEBSTER'S THIRD NEW INT'L DICTIONARY at 1094-95.

The designated evidence in this case shows that Buckeye's property consists of a four-story building with 124 private rooms that contain overnight sleeping, bathroom, cooking, and dining accommodations for transient and semi-transient travelers. (See Cert. Admin. R. at 73-74, 77-82, 667-80.) The designated evidence further shows that Buckeye does not treat guests differently based on their length of stay. For example, Buckeye does not set aside rooms solely for the use of long-term guests, reserve public areas for the exclusive use of long-term guests, or require long-term guests to sign a lease in order to stay at the property for more than 30 days. (See Cert. Admin. R. at 74, 668.) Moreover, the designated evidence does not indicate whether any of Buckeye's long-term guests used the property's address as their mailing, voter registration, or driver's license address. (See Cert. Admin. R. at 69-654, 665-82.) Consequently, the Indiana Board did not err in concluding that Buckeye's entire property was a hotel and did not qualify as "residential property" amenable to the 2% tax cap credit.

**CONCLUSION**

The Assessor has not demonstrated that the doctrine of administrative res judicata barred Buckeye's appeal, and Buckeye has not demonstrated that the Indiana Board's final determination is contrary to law. Accordingly, the Court AFFIRMS the final determination of the Indiana Board that upheld the classification of Buckeye's real property as nonresidential and the concomitant 3% tax cap credit for the years at issue.

11