ATTORNEY FOR PETITIONER:
**PAUL M. JONES, JR.**
PAUL JONES LAW, LLC
Greenwood, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**MEREDITH B. McCUTCHEON**
**WINSTON LIN**
**REBECCA L. McCLAIN**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

FILED

Mar 10 2020, 4:01 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| UNIVERSAL HEALTH REALTY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 19T-TA-00012 |
| | ) |
| WILLIAM J. FLUTY, JR., in his official capacity as VANDERBURGH COUNTY ASSESSOR, | ) |
| | ) |
| | ) |
| Respondent. | ) |

### ON APPEAL FROM A FINAL DETERMINATION OF
### THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**March 10, 2020**

WENTWORTH, J.

In March of 2019, the Indiana Board of Tax Review issued a final determination that found that Universal Health Realty's real property tax liability was required to be computed using the 3% property tax cap for the 2011 through 2015 tax years. The Court affirms the Indiana Board's final determination.

**FACTS AND PROCEDURAL HISTORY**

During the years at issue, Universal Health owned property in Evansville, Indiana that was used as an inpatient rehabilitative hospital (Hospital). (See, e.g., Cert. Admin. R. at 123-35, 358-60.) The 85-bed Hospital was operated by Encompass Health pursuant to a license issued by the Indiana State Department of Health under Indiana Code § 16-21. (See, e.g., Cert. Admin. R. at 128-35, 358-60.)

The Hospital provided rehabilitative services to patients who, after being discharged from acute care hospitals, were still not ready to return home. (See Cert. Admin. R. at 358-60.) While the average length of stay by a patient at the Hospital was only 2 weeks, some patients stayed as long as two or three months depending on the extent of their injuries or illnesses. (Cert. Admin. R. at 358.) Upon discharge from the Hospital, 80% of the patients returned home. (Cert. Admin. R. at 361.) The remaining 20% of patients were admitted to either a nursing home, another acute care hospital, or hospice upon discharge. (Cert. Admin. R. at 361.)

For each of the tax years at issue, Universal Health's property tax liability on the Hospital was computed using the 3% property tax cap applicable to nonresidential property. (See, e.g., Cert. Admin. R. at 2-5, 18-21, 36-39, 54-57, 72-75.) Universal Health subsequently appealed those computations, first to the Vanderburgh County Property Tax Assessment Board of Appeals and then to the Indiana Board. (See, e.g., Cert. Admin. R. at 2-5, 18-21, 36-39, 54-57, 72-75.) Throughout those appeals, Universal Health argued that Indiana Code § 6-1.1-20.6-7.5 required its property tax liability to be computed using a 2% property tax cap because its property was either 1) a hospital, 2) a long term care property, or 3) a residential property. (See, e.g., Cert.

2

Admin. R. at 2-5, 18-21, 36-39, 54-57, 72-75, 355-56.)  On March 11, 2019, after conducting a hearing on the matter, the Indiana Board issued a final determination rejecting each of Universal Health's three arguments. (See Cert. Admin. R. at 344-51.)

Universal Health initiated an original tax appeal on April 24, 2019.  The Court heard the parties' oral arguments on October 24, 2019.[1]  Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity.  Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003).  Accordingly, Universal Health must demonstrate to the Court that the Indiana Board's final determination in this matter is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence.  See IND. CODE § 33-26-6-6(e)(1)-(5) (2020).

## LAW

Indiana Code § 6-1.1-20.6 governs the computation and allocation of Indiana's property tax caps.  See generally IND. CODE §§ 6-1.1-20.6-0.3 to -13 (2020) (the "Tax Cap Statutes").  Specifically, a property's annual tax liability is capped (i.e., it cannot exceed) a certain percentage of its gross assessed value under Indiana Code § 6-1.1-

[1] The Court conducted its oral argument at the Indiana University Maurer School of Law in Bloomington, Indiana.  The Court thanks Maurer for its hospitality and the parties and their counsel for traveling to Bloomington and their able advocacy.  The Court also wishes to thank Mr. Steve Paul, adjunct professor at Maurer, for coordinating and scheduling the argument.

20.6-7.5.  See IND. CODE § 6-1.1-20.6-7.5 (2011).  The cap is accomplished by applying

a credit in

> the amount by which the person's property tax liability attributable to
> the person's:
>
> > (1) homestead exceeds one percent (1%);
> > (2) residential property exceeds two percent (2%);
> > (3) long term care property exceeds two percent (2%);
> > (4) agricultural land exceeds two percent (2%);
> > (5) nonresidential real property exceeds three percent
> >     (3%); or
> > (6) personal property exceeds three percent (3%);
>
> of the gross assessed value of the property that is the basis for
> determination of property taxes for that calendar year.

I.C. § 6-1.1-20.6-7.5(a).  For purposes of this computation, the Legislature has defined

the terms "residential property" and "long term care property."  Indiana Code § 6-1.1-

20.6-4 defines "residential property" as "[r]eal property that consists of:  (A) a building

that includes two or more dwelling units; (B) any common areas shared by the dwelling

units; and (C) the land, not exceeding the area of the building footprint, on which the

building is located."  IND. CODE § 6-1.1-20.6-4 (2011) (amended 2013).  Indiana Code §

6-1.1-20.6-2.3 defines "long term care property" as property that

> (1) is used for the long term care of an impaired individual;
>     and
> (2) is one (1) of the following:
>     (A) A health facility licensed under IC 16-28.
>     (B) A housing with services establishment (as
>         defined in IC 12-10-15-3) that is allowed to use
>         the term "assisted living" to describe [its]
>         housing with services establishment's services
>         and operations to the public.
>     (C) An independent living home that, under
>         contractual agreement, serves not more than
>         eight (8) individuals who:
>         > (i) have a mental illness or
>         >     developmental disability;

4

> (ii) require regular but limited supervision; and
>
> (iii) reside independently of their families.

IND. CODE § 6-1.1-20.6-2.3 (2011).

## ANALYSIS

On appeal, Universal Health contends that the Indiana Board's final determination must be reversed because it is contrary to law and constitutes an abuse of discretion. (Pet'r Br. at 4, 6, 8-9.) More specifically, Universal Health argues that its property tax liability should have been computed using the 2%, not the 3%, tax cap because its property constitutes 1) a hospital, 2) a long term care property, or 3) residential property. (Pet'r Br. at 4-11.)

### 1) Hospital

Universal Health first argues that because its property is a hospital, it was entitled to have its property tax liability computed during the years at issue using the 2% cap. Universal Health acknowledges that Indiana Code § 6-1.1-20.6-7.5 does not explicitly refer to hospitals, but claims two memoranda issued by the Department of Local Government Finance ("DLGF") to local assessing officials in 2008 assigns the 2% cap to hospitals. (See Pet'r Br. at 4-6; Oral Arg. Tr. at 4-6.) The memoranda provided a general list of property class types along with corresponding cost codes and property tax cap assignments. (See Cert. Admin. R. at 136, 139, 143-45.) Universal Health points out that the memoranda assign commercial nursing homes and hospitals a code of "412" and indicate that they are subject to the 2% property tax cap. (See Cert. Admin. R. at 136, 139, 143-45.) Thus, Universal Health concludes the memoranda required its property tax liability be computed using the 2% cap because its property

5

was a hospital.  (See Pet'r Br. at 5-6.)  Universal Health's reliance on the memoranda, however, is misplaced.

First, the memoranda explicitly indicate that they are offering non-binding guidance to local assessing officials.  (See, e.g., Cert. Admin. R. at 136 (stating that "[t]his [M]emorandum will answer [some] questions and suggest classification cap assignments" (emphasis added)).)  In fact, they provide the specific disclaimer that "depending on the circumstances some propert[ies ] may have more than one possible [property tax] cap.  The ultimate decision on the most appropriate property class code and [property tax cap] rests with the local assessing official." (See Cert. Admin. R. at 136 (emphasis added).)

Second, and more importantly, the DLGF is authorized to adopt rules, regulations, and advisory memoranda, like those at issue here, that enable it to accomplish the purposes of Indiana's property assessment statutes, but it is not authorized to make any rules, regulations, or issue memoranda that are inconsistent with the statutes it administers or that add to or detract from the law as enacted.  See, e.g., IND. CODE § 6-1.1-1-15 (2020) (indicating that the DLGF prescribes the standards that are to be used in assessing real property); Austin v. Indiana Family & Soc. Servs. Admin., 947 N.E.2d 979, 982 (Ind. Ct. App. 2011) (explaining that an administrative agency's interpretation of a statute is entitled to great weight unless it is inconsistent with the law itself); Lowe's Home Ctrs., LLC v. Indiana Dep't of State Revenue, 23 N.E.3d 52, 59 (Ind. Tax Ct. 2014) (stating that an administrative agency "'may not make rules and regulations inconsistent with the statute[s] which it is administering, it may not by its rules and regulations add to or detract from the law as enacted, nor may it by rule

6

extend its powers beyond those conferred upon it by law'" (citations omitted)), review denied. Indiana Code § 6-1.1-20.6-7.5(a) explicitly provides that the 2% cap applies to just three types of property: residential property, long term care property, and agricultural land. I.C. § 6-1.1-20.6-7.5(a). Thus, Universal Health's property tax liability cannot be computed using the 2% cap based on the memoranda because the Legislature did not list hospital property as a type of property eligible for the 2% property tax cap under the statute. Accordingly, the Court will not reverse the Indiana Board's determination on basis of the memoranda.[2]

## 2) Long Term Care Property

Next, Universal Health argues that it was entitled to have its property tax liability computed using the 2% cap because it is a "long term care property." (See Pet'r Br. at 6-8.) "Long term care property" is property that "is used for the long term care of an impaired individual[] and . . . [a] health facility licensed under IC 16-28."[3] I.C. § 6-1.1-20.6-2.3 (emphasis added).

In its final determination, the Indiana Board denied Universal Health's request for long term care status solely because the Hospital was not licensed under Indiana Code § 16-28, but was licensed instead under Indiana Code § 16-21. (See Cert. Admin. R. at 347-48 ¶¶ 13-14 (explaining that while the Hospital may be subject to certain provisions of Indiana Code § 16-28, it was not licensed under Indiana Code § 16-28).) (See also

---

[2] Given its resolution of this issue, Universal Health's argument that the Assessor erroneously assigned its property a code of "447," applicable to 1 or 2-story commercial offices, and not the "412" code applicable to commercial nursing homes and hospitals, (see Pet'r Br. at 4; Oral Arg. Tr. at 7-11), is moot.

[3] Under Indiana Code § 6-1.1-20.6-2.3, a facility can also qualify as a long term care property if it is either a "housing with services establishment" or an "independent living home." See supra pp. 4-5. Universal Health does not seek long term care property status under either of those definitions. (See Oral Arg. Tr. at 12.)

7

Cert. Admin. R. at 128-35, 366; Pet'r Br. at 8 (where Universal Health admits the Hospital was not licensed under Indiana Code § 16-28).) Universal Health argues nonetheless that its property is used for the long term care of impaired individuals and is a health facility, stating that

> Indiana Code § 16-18-2-167 provides, in pertinent part, that the term "health facility" means <u>a building, a structure, an institution, or other place for the reception, accommodation, board, care, or treatment extending beyond a continuous twenty-four (24) hour period in a week of more than four (4) individuals who need or desire such services because of physical or mental illness, infirmity, or impairment.</u> . . . [A]t all times during the [y]ears in [i]ssue, the Property was used to provide "accommodation, board, care, or treatment extending beyond a continuous twenty-four (24) hour period in a week of more than four (4) individuals who need or desire such services because of physical or mental illness, infirmity, or impairment." Residents of the Property are admitted to the [H]ospital due to physical and/or mental impairments. The residents at the Property stay overnight and often stay several nights (average of nearly two (2) weeks) as part of their rehabilitation. As a result, the entire Property is used for "long term care" purposes, as defined in the Indiana Code.

(Pet'r Br. at 7-8 (citations omitted).) Universal Health concludes, therefore, that its property would have qualified as a long term care property but for the Indiana Board's arbitrary distinction "as to whether a hospital must be 'subject to IC 16-28' or 'licensed under IC-28[.]'" (Pet'r Br. at 8 (citation omitted).)

When construing a statute, the primary goal is to determine and apply the intent of the Legislature in enacting that statute. See <u>Hamilton Square Inv., LLC v. Hamilton Cty. Assessor</u>, 60 N.E.3d 313, 317 (Ind. Tax Ct. 2016), <u>review denied</u>. The best evidence of this intent is found in the plain language of the statute itself, as chosen by the Legislature. See <u>id.</u> Consequently, meaning must be given to each and every word used in a statute because it will not be presumed that the Legislature intended to

8

enact a statutory provision that is superfluous, meaningless, or a nullity.  See id.  In a similar vein, when the language of a statute is clear and unambiguous, the meaning of statute may not be expanded or contracted by reading into it language or words that simply are not there or, alternatively, omitting from the statute language or words that are there.  See DeKalb Cty. E. Cmty. Sch. Dist. v. Dep't of Local Gov't Fin., 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010).

The Indiana Board did not create or apply an arbitrary distinction when it determined that Universal Health's property did not qualify as a long term care property because it was not a health facility licensed under Indiana Code § 16-28.  Instead, the Indiana Board applied the plain language of Indiana Code § 6-1.1-20.6-2.3 exactly as it was written, giving meaning to the words intentionally chosen by the Legislature.  As a result, the Court will not reverse the Indiana Board's final determination on this basis either.

### 3) Residential Property

Finally, Universal Health claims it was entitled to have its property tax liability computed during the years at issue using the 2% tax cap because its property was a "residential property."  (See Pet'r Br. at 9-10.)  To be considered a "residential property," Universal Health's property must contain "two (2) or more dwelling units[.]"  See I.C. § 6-1.1-20.6-4.

Universal Health argues that because "[its p]roperty is used as an 85-bed hospital . . . it includes more than two (2) 'dwelling units.'"  (Pet'r Br. at 9 (emphasis and citation omitted).)  As support for this argument, Universal Health relies on Indiana Code § 32-31-5-3(a), a general provision in Indiana's Landlord Tenant statutory scheme, that

9

defines a "dwelling unit" as "a structure or part of a structure that is used as a home, residence, or sleeping unit[.]" (See Pet'r Br. at 9 (quoting IND. CODE § 32-31-5-3(a) (2011) (emphasis added)).) In other words, Universal Health maintains that under Indiana Code § 32-31-5-3, each of its 85 beds constitutes a sleeping unit and, in turn, a dwelling unit. (See Pet'r Br. at 10.) The Court, however, does not find this argument persuasive.

As previously explained, the Court gives effect to the Legislature's intent when construing a statute, finding the best evidence of that intent in the plain language of the statute itself. See Hamilton Square Inv., 60 N.E.3d at 317. Statutory words and phrases are understood in their plain, ordinary, and usual sense. Johnson Cty. Farm Bureau Co-op. Ass'n, Inc. v. Indiana Dep't of State Revenue, 568 N.E.2d 578, 581 (Ind. Tax Ct. 1991), aff'd, 585 N.E.2d 1336 (Ind. 1992). Moreover, the words of a statute are read within the context of the whole statutory act of which they are a part as well as in harmony with other statutes applicable to the same subject matter. Id. at 584. Accordingly, Universal Health's reliance on the definition of "dwelling unit" found in Indiana's Landlord Tenant statutory scheme is too remote to be reliable when the meaning of the term "dwelling unit" can be ascertained from Indiana's property tax statutory scheme (i.e., Title 6, Article 1.1) itself.

Indiana Code § 6-1.1-12-37 defines "dwelling" as "[r]esidential real property improvements that an individual uses as [her] residence, including a house or garage." IND. CODE § 6-1.1-12-37(a)(1) (2011). Under this definition, a residence is much more than just a bed. See, e.g., Kellam v. Fountain Cty. Assessor, 999 N.E.2d 120, 122 (Ind. Tax Ct. 2013) (explaining that one's principal place of residence is "'an individual's true,

10

fixed, permanent home to which the individual has the <u>intention</u> of returning after an absence'" (quoting 50 IND. ADMIN. CODE 24–2–5 (2009))), <u>review</u> <u>denied</u>; <u>Brookover v. Kase</u>, 83 N.E. 524, 524 (Ind. Ct. App. 1908) (stating that "[r]esidence, as used in our tax laws, means a permanent abode, as distinguished from a temporary sojourn" (citation omitted)). <u>See</u> <u>also</u> WEBSTER'S THIRD NEW INT'L DICTIONARY 1931 (2002) (defining "residence" as a "dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit").

The evidence in this case reveals that patients who stayed at Universal Health's property during the years at issue did so temporarily. (<u>See</u> Cert. Admin. R. at 358, 361 (indicating that patients stayed at the property for a short period of time before either returning home, being admitted to an assisted/skilled living facility, or being admitted to hospice).) As a result, Universal Health's 85 beds did not constitute 85 individual dwelling units. Because Universal Health's property was not comprised of multiple dwelling units, it did not qualify as a "residential property" for purposes of the 2% property tax cap under Indiana Code § 6-1.1-20.6-7.5(a). Therefore, the Court will not reverse the Indiana Board's final determination on this basis either.

## CONCLUSION

Universal Health has not demonstrated that the Indiana Board's final determination is contrary to law or constitutes an abuse of discretion. Accordingly, the Indiana Board's final determination in this matter is AFFIRMED.

11